**Christine H. PATTERSON,**
**Plaintiff-Appellee,**

v.

**NORFOLK AND WESTERN RAILWAY COMPANY, a foreign corporation,**
**Defendant-Appellant.**

**No. 73–1076.**

United States Court of Appeals.
Sixth Circuit.

Argued Oct. 2, 1973.

Decided Dec. 28, 1973.

---

304

Bodman, Longley, Bogle, Armstrong & Dahling by James M. Baysinger, James Robert Buschmann, Detroit, Mich., on brief, for defendant-appellant.

Charles E. Lampert, David M. Fried, Southfield, Mich., on brief, for plaintiff-appellee.

Before McCREE and MILLER, Circuit Judges, and KRUPANSKY, District Judge.

WILLIAM E. MILLER, Circuit Judge.

This appeal involves the liability of a railroad under the Federal Employers Liability Act, 45 U.S.C. Sec. 51 et seq., resulting from a contagious disease contracted by a clerical employee from a fellow employee. Plaintiff-appellee, Christine Patterson, was employed in January, 1966, by defendant-appellant, Norfolk and Western Railway Company, as a stenographer-clerk and was assigned to its offices in Detroit, Michigan. She worked at a desk directly behind a fellow clerical employee until he was hospitalized in January, 1968 with advanced pulmonary tuberculosis. After the hospitalization, the appellant suggested that all employees who had been in close proximity to the afflicted employee should have a physical examination. Acting on this suggestion, appellee had a medical examination and was found to have pulmonary tuberculosis. She later brought an action against the railroad, alleging that she had contracted the disease from her fellow employee near whom she was required to work and that the railroad was liable under the F.E.L.A. for negligently failing to provide her with a safe place in which to work. The district court submitted the case to a jury which returned a verdict in her favor in the amount of $45,000.00. The railroad perfected its appeal to this Court.

Appellant phrases the first issue as follows:

"Under the Federal Employers' Liability Act is a railroad under a duty to its employees to remove from his post a fellow employee who is afflicted with a contagious but nonoccupational disease, until the railroad actually perceives the potential for danger in him?"

In arguing that the trial court erroneously answered this question in the affirmative, the railroad points out that the afflicted employee's condition concededly did not result from his employment. A further facet of the railroad's argument is that the law imposes no requirement that a reasonably prudent employer must equip himself with special knowledge or expertise in the field of contagious diseases not indigenous to the employer's business. The railroad insists that liability can arise only if it should happen to acquire actual knowledge of the existence of the disease in an employee, or special knowledge from the use of which it can reasonably perceive the potential for danger. "Then and only then," it is insisted, "does the duty of ordinary care for the safety of other employees arise."

We are unable to find support for this restrictive view of a railroad's duty under the F.E.L.A. Case law clearly establishes that under the Act liability for negligence attaches if the railroad "knew, or by the exercise of due care should have known" of the danger or risk to an employee. Urie v. Thompson, 337 U.S. 163, 178, 69 S.Ct. 1018, 93 L.Ed. 1282 (1948). The applicable standard or test for negligence under this statute, as the trial court charged, is simply the failure to use ordinary care under the circumstances in the management of the railroad's affairs. See Harrison v. Missouri P.R. Co., 372 U.S. 248, 83 S.Ct. 690, 9 L.Ed.2d 711 (1963), and Gallick v. Baltimore & O.R. Co., 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed. 2d 618 (1963). The trial court properly rejected instructions which would have gone beyond this measure of care and would have required the jury to find *actual knowledge* of the disease or knowledge of *special* facts from which the railroad could reasonably perceive the potential for danger. Ample evidence was presented to justify the court in submitting to the jury the question of ordinary care. Without detailing all of the evidence, it was shown that appellee was required to work near the afflicted employee; and that such employee for a considerable period of time exhibited a pallid appearance and gave other signs of illness, including constant coughing and loss of weight. The jury could reasonably find that the railroad with admitted knowledge of these facts failed to meet the required standard of ordinary care. That the appellee did in fact con-

tract the disease from her fellow employee in the course of her employment is not seriously questioned. We find it to be immaterial, insofar as the railroad's duty of care is concerned, that the environment in which appellee worked —that of a typical downtown office staffed by white collar workers—may have been such that it carried, in and of itself, no risk of contracting pulmonary tuberculosis. The crucial test is a failure to exercise the care of an ordinary prudent person under the particular circumstances. The issue was for the jury to resolve.

Did the trial court, as appellant insists, err in failing to instruct the jury on the law of contributory negligence?

■■ Under the F.E.L.A., contributory negligence is not a defense but must be considered in diminution of damages. Rogers v. Missouri P.R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1956). The appellant argues that the appellee was in a position to observe the symptoms of the fellow employee and was therefore contributorily negligent in not perceiving the possible danger. Although there is evidence that the appellee observed her fellow employee's apparent weight loss and weak, pale appearance, she did report his noticeable appearance to the office manager. This was all that she reasonably could have done. We do not deem these facts sufficient to raise a substantial issue of contributory negligence, with the result that the trial court was not in error in his denial of the requested charge. At best, appellee's conduct may arguably have constituted an assumption of the risk, "every vestige" of which has been eliminated by the F.E.L.A. Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63

S.Ct. 444, 87 L.Ed. 610 (1943); *cf.* Dixon v. Penn Central Co., 481 F.2d 833 (6th Cir.).

Another issue raised on appeal is whether the trial court erred in admitting into evidence the medical records of the afflicted fellow employee.

In preparation for trial, a law clerk employed by the appellee's attorney obtained from the fellow employee a consent to the examination of his hospital medical records. The fellow employee gave his consent under the assumption that if he refused to do so, the appellee could obtain the records by subpoena. The trial judge held that despite that misapprehension the fellow employee had waived the physician-patient privilege to which he was entitled under Michigan law (M.C.L. 600.2157; Stat. Ann. 27A.2157) and that the medical records were admissible as evidence. Although the trial court focused on waiver of the privilege, the real issue is whether this state-created privilege is applicable in a federal court trial under the circumstances of the present case.

■ Under Rule 43(a) of the Federal Rules of Civil Procedure, the so-called "maximum admissibility" rule, evidence may be received in federal court if it is admissible under any of three tests: (a) under a federal statute, (b) under federal equity precedents, or (c) under the rules of evidence of the state in which the court sits. Wright v. Wilson, 154 F.2d 616 (3rd Cir.), cert. den., 329 U.S. 743, 67 S.Ct. 50, 91 L.Ed. 640 (1946). In this case, the privilege is a state-created one which, if enforced, would exclude the contested evidence.[1] Under the policies of the maximum admissibility rule, some federal courts, in

---

1. This evidence would be admissible subject to the same restrictions as any other documentary evidence under the proposed Federal Rules of Evidence. The Advisory Committee's note to Rule 504 of the new Federal Rules of Evidence, approved by the Supreme Court of the United States, but not yet effective, stated:

"The rules contain no provision for a general physician-patient privilege. While many states have by statute created the privilege, the exceptions which have been found necessary in order to obtain information required by the public interest or to avoid fraud are so numerous as to leave little if any basis for the privilege."

Since the Federal Rules of Evidence are not in effect, we must of course look elsewhere to resolve this problem.

cases involving federal questions, independently weigh conflicting federal and state interests before enforcing state-created privileges. In Garner v. Wolfinbarger, 430 F.2d 1093, 1098 (5th Cir. 1970), the court stated:

> "This is a federal question case (with ancillary state aspects) rather than a diversity case. Such actions are predicated on federal law, embodying federal policies. Enforcement of these policies demands that the federal courts apply their own rules of privilege where substantial state interests are not infringed."

In any given instance a special federal interest in seeking the truth in a federal question case may require admissibility of evidence despite the existence of a state rule holding such evidence to be privileged.[2] Fears v. Burris Manufacturing Co., 436 F.2d 1357 (5th Cir. 1971); Carr v. Monroe Manufacturing Co., 431 F.2d 384 (5th Cir. 1970). This Court has held that a state-created privilege which would have excluded a wife's testimony was not absolutely binding in a federal question case. United States v. Brunner, 200 F.2d 276 (6th Cir. 1952):

> Finally, we hold in the light of modern concepts that the evidence of Mrs. Brunner and the threat of Brunner to impose silence upon his wife is not in the present circumstances privileged. This is a civil case based upon a record necessarily relied upon by Brunner. He must stand or fall by what it discloses. We said in Fraser v. United States, supra [145 F.2d 145, 6 Cir.], "a disclosure once made is irrevocable. It is public property and may not be recalled." To recognize the privilege in present circumstances is to expand it beyond the considerations that gave it birth.

The state interest in the physician-patient privilege is the protection of confidentiality to encourage full disclosure by the patient to the physician so that adequate and complete medical treatment may be obtained. The medical records of the fellow employee were released by him to the plaintiff's attorney. With this disclosure the substantial state interest in protecting the confidentiality of the records was vitiated. The federal interest of seeking the truth in federal question cases easily tips the scales on the facts of this case against the state interest. Thus the trial court correctly admitted the records in evidence. We reach this result without determining whether a consent given under the particular facts presented here is a valid waiver of a state-created privilege where federal policies are not involved.

A further issue before us is whether hospital bills incurred in the treatment of an injury due to the employer's negligence and paid for by the employee's hospitalization insurance are recoverable as damages from the employer in an F.E.L.A. action where the employer has provided such insurance to the employee free of charge.

The general rule under the F.E.L.A. is that an employee may recover damages from the employer even though the damages have already been paid by insurance if the insurance is a "collateral source." Haughton v. Blackships, Inc., 462 F.2d 788 (5th Cir. 1972). The court in explaining the collateral source rule in Haughton, stated:

> "The policy considerations for the collateral source rule are apparent. On the one hand, an employer-tortfeasor who voluntarily undertakes to indemnify itself against liability by payment into a fund for that purpose, should not be penalized by permitting

2. Many federal courts in non-diversity cases have reached the same result by undertaking to determine the question of privilege with little or no reference to the state law. *See* Natta v. Hogan, 392 F.2d 686 (10th Cir. 1968); Radiant Burners, Inc. v. American Gas Ass'n., 320 F.2d 314 (7th Cir.), cert. den., 375 U.S. 929, 84 S.Ct. 330, 11 L.Ed.2d 262 (1963); United States v. United Shoe Machinery Corp, 89 F.Supp. 357 (D.Mass. 1950).

the plaintiff a double recovery of his benefits under the fund as well as his full measure of damages. On the other hand, where the employer-tortfeasor makes payment directly or indirectly into a fund established for an independent reason, or where such payment by the employer should be considered in the nature of a fringe benefit or deferred compensation, the employer should not be entitled to benefit by setting off such income in mitigation of his responsibility as a tortfeasor."

Id. at 791.

 The appellee's hospital bills were paid under an insurance policy supplied to her by the appellant who paid all of the insurance premiums. The appellant urges that the policy was purchased to indemnify the company from liability for injuries to employees. The payment of premiums does not prevent the insurance policy from being classified as a collateral source. Application of the collateral source rule depends more upon the character of the benefits than upon the source of the funds. United States v. Price, 288 F.2d 448 (4th Cir. 1961). *See also* Gypsum Carrier, Inc. v. Handelsman, 307 F.2d 525 (9th Cir. 1962); Hall v. Minnesota Transfer Ry. Co., 322 F.Supp. 92 (D. Minn.1971).[3] In Wagner v. Reading Co., 428 F.2d 289 (3rd Cir. 1970), the issue of whether insurance payments were a collateral source was decided in favor of the employer. In that case, however, the employer directly paid the plaintiff's medical expenses and then was reimbursed by its own insurance carrier. The appellant here paid premiums directly to the insurer, much as an employer might at the direction of an employee deduct money from wages and pay insurance premiums on a group insurance policy. The appellee was the insured under the policy in this case, not the appellant. At least for purposes of

analysis under the collateral source rule, the policy may best be classified as a fringe benefit given in part consideration for the appellee's services as an employee. Such insurance was thus a collateral source. The trial court, therefore, was not in error in refusing to admit evidence pertaining to it.

We have considered the other issues raised by the appellant and find them to be without merit.

Affirmed.

---

3. The appellant attempts to distinguish *Hall* because the insurance policy in that case was supplied by the employer as the result of a collective bargaining agreement while in

our case the company acted unilaterally without the compulsion of a union contract. In the context of this case we find this distinction to be immaterial.