Rick E. CLARK, Appellant & Cross-Appellee,

v.

BURLINGTON NORTHERN, INC., a corporation, Appellee & Cross-Appellant.

Nos. 83–1800, 83–1839.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 16, 1983.

Decided Feb. 10, 1984.

John P. Mullen of Gaines, Otis, Haggart, Mullen & Carta, Omaha, Neb., for appellee.

Inserra Law Offices, Omaha, Neb., for appellant.

Before HEANEY, ROSS and FAGG, Circuit Judges.

HEANEY, Circuit Judge.

Rick E. Clark brought this action against the Burlington Northern Railroad (Burlington) under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51 *et seq.* (1976), claiming damages for injuries he sustained while working as a switch foreman for Burlington. A jury found Clark ten percent negligent and awarded him $171,121.21. The trial court[1] subsequently reduced the award by $47,268.21 because of disability payments and advances Burlington made to Clark before trial. Clark appeals the reduction of his damage award. Burlington cross-appeals contending the trial court erred in instructing the jury that assumption of risk was not a defense in the case. Burlington further urges us to find the verdict contrary to the evidence and excessive. We affirm on all issues.

## BACKGROUND

On November 27, 1978, Clark and other members of the switching crew were lining up a train in the Creston, Iowa, switch-yards. Clark somehow fell between two cars and his right hand was mangled under a wheel. Over the next five years, he received both medical and psychiatric treatment for the physical and psychological repercussions of the accident. He underwent eight operations to restore his hand. Severe depression over his future prospects and constant pain led a psychiatrist to hospitalize Clark in a psychiatric institute during February, 1982. Nevertheless, Clark was able to temporarily return to work for Burlington on three separate occasions and returned on a full-time basis one week before trial.

Clark received thirty-four payments from the Burlington claims department, totaling $19,525. For each of these payments, Clark signed a form entitled "Agreement for Advancement of Funds." The form stipulated that the amounts he received would be deducted from any settlement or other payment made on account of his injuries. In addition, Clark became eligible for the short-term and long-term disability plans available to railroad nonunion employees when he worked as a terminal supervisor trainee after the accident. Under these plans, Clark received $8,824.21 in short-term disability payments and $18,919 in long-term disability payments.

After the jury returned its verdict, the district court considered Burlington's motion to credit the advances and disability plan payments against the verdict. The court had no difficulty finding Clark had agreed the advances would reduce any future verdict. The disability payments gave the court more pause, however, because of the collateral source rule which permits a plaintiff to recover the full measure of damages—without setoff or credit—even though the plaintiff is also compensated from an independent source such as insurance. *Overton v. United States,* 619 F.2d 1299, 1306 (8th Cir.1980); *Restatement (Second) of Torts* § 920A(2) (1977). The court concluded that because Burlington es-

---

1. The Honorable Richard E. Robinson, United States District Court Judge for the District of Nebraska.

tablished the disability plans to indemnify or otherwise protect itself from liability for job-related injuries, the collateral source rule did not apply to those payments. The court therefore credited the full amount of the advances and the disability payments against the verdict. Clark appeals only the setoff of the disability plan payments.

## DISCUSSION

The FELA contains a provision specifically addressing the propriety of setoffs against FELA judgments:

Any contract, rule, regulation or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter shall to that extent be void: *Provided, That in any such action brought against a common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which that action was brought.*

45 U.S.C. § 55 (1976) (emphasis added). While at first glance the language of this provision seems broad enough to completely abrogate the common law collateral source rule, courts have limited the scope of the provision by focusing on the requirement that the covered payments be made "on account of the injury." *See Russo v. Matson Navigation Co.,* 486 F.2d 1018, 1021 (9th Cir.1973) (per curiam). Thus, the cases draw a distinction between payments emanating from a fringe benefit such as a retirement fund or a general hospital and medical insurance plan, and payments which the employer has undertaken voluntarily to indemnify itself against possible liabilities under the FELA. *E.g., Patterson v. Norfolk and Western Railway,* 489 F.2d 303, 307 (6th Cir.1973); *Blake v. Delaware and Hudson Railway,* 484 F.2d 204, 206 (2d Cir.1973); *Hall v. Minnesota Transfer Railway,* 322 F.Supp. 92, 95 (D.Minn.1971).

The policy considerations underlying this distinction are aptly expressed in *Haughton v. Blackships,* 462 F.2d 788 (5th Cir.1972), a maritime action applying the collateral source rule:

On the one hand, an employer-tortfeasor who voluntarily undertakes to indemnify itself against liability by payment into a fund for·that purpose, should not be penalized by permitting the plaintiff·a double recovery of his benefits under the fund as well as his full measure of damages. On the other hand, where the employer-tortfeasor makes payment directly or indirectly into a fund established for an independent reason, or where such payment by the employer should be considered in the nature of a fringe benefit or deferred compensation, the employer should not be entitled to benefit by setting off such income in mitigation of his responsibility as a tortfeasor.

*Id.* at 791.

A problem arises in distinguishing a fringe benefit from a benefit meant to indemnify an employer against future liability. A benefit may be exempt from setoff under the collateral source rule even though the employer is the sole source of the fund. The important consideration is the character of the benefits received, rather than whether the source is actually independent of the employer.· *Haughton v. Blackships, Inc., supra,* 462 F.2d at 790; *Hall v. Minnesota Transfer Railway, supra,* 322 F.Supp. at 95. Medical expenses paid for by insurance are exempt from setoff regardless of whether the employer paid one hundred percent of the insurance premiums. *Patterson v. Norfolk and Western Railway, supra,* 489 F.2d at 308; *Blake v. Delaware and Hudson Railway, supra,* 484 F.2d at 207; *Hall v. Minnesota Transfer Railway, supra,* 322 F.Supp. at 97. Courts have also ruled private disability retirement plans established by a collective bargaining agreement and covering both job-related and non-job-related illness and injury are

exempt from setoff.[2] *Haughton v. Black-ships, Inc., supra,* 462 F.2d at 791; *Russo v. Matson Navigation Co., supra,* 486 F.2d at 1020. *Contra Thomas v. Humble Oil and Refining Co.,* 420 F.2d 793, 794 (4th Cir. 1970) (disability plan specifically suspended the employer's liability for maintenance payments).

The issue in the instant case is whether the district court properly characterized the disability plans under which Clark received benefits as having been established to protect the railroad from liability for job-related injuries and thus deductible from the FELA verdict. Although an insurance company administered the plans, Burlington wholly funded them and they were not a part of any collective bargaining agreement. A persuasive argument can be made, however, that the disability benefits were exempt from setoff as a fringe benefit because they were payable regardless of whether the disability resulted from a job-related injury. *See Hall v. Minnesota Transfer Railway, supra,* 322 F.Supp. at 96–97. In reaching the opposite conclusion, the district court looked at specific provisions of the disability plans.

Both the long-term and short-term disability plans explicitly provide that money paid or payable under the FELA decreases the benefits allowable.[3] While, as Clark points out, these provisions only call for a setoff of FELA payments against the disability benefits, the district court interpreted the provisions to manifest Burlington's intent to avoid double liability regardless of whether the FELA judgment preceded benefit disbursement or vice versa. We agree.

Moreover, the employer's manifest intent to avoid double liability in offering disability plans must be respected if the collateral source rule is not to swallow up 45 U.S.C. § 55 at the ultimate expense of employees.

 Section 55 allows employers to set off money paid to an injured employee because of his or her injury as long as the employer is not seeking to totally avoid liability. The exception created for fringe benefit and insurance programs was meant to prevent a windfall to employers, not to deter them from voluntarily paying monthly disability payments in lieu of wages to disabled workers. We agree with the cases holding that fringe benefit programs, such as medical and hospital insurance and retirement pensions that are offered as partial consideration for employment, cannot be set off against an FELA judgment. But where, as here, the employer clearly intends to make a voluntary disability plan supplemental to sums recovered under the FELA, setoff is appropriate.

The jury undoubtedly considered the stipulated lost wages in calculating a damage award. Under the disability plans, Clark had already received a percentage of his lost wages amounting to $27,743.21. The district court correctly credited this amount against the final verdict to prevent double recovery. As noted above, Clark does not appeal the crediting of $19,525 in advances. Therefore, a total of $47,268.21 was properly set off against the verdict.

 In its cross-appeal, Burlington contends the district court committed reversi-

---

**2.** The collateral source rule undisputedly applies to payments made under the Railroad Retirement Act and other benefits received under social legislation not directly attributable to contributions of the employer. Evidence of such payments is inadmissible in FELA actions. *Eichel v. New York Central Railway,* 375 U.S. 253, 254, 84 S.Ct. 316, 317, 11 L.Ed.2d 307 (1963).

**3.** Article III governing short-term disability benefits states:

3.02 Other Income Benefits—The benefits described above will be decreased by the following:

\* \* \* \* \* \*

3.022 Any disability benefit paid or payable under any Workmen's Compensation or

Occupational Disease Act *or the Federal Employer's Liability Act* \* \* \*. [Emphasis added.]

Article V governing long-term disability benefits states:

The amount of the Monthly Benefit Payable during the Covered Employee's total disability shall be reduced by the following:

A. Such amount of benefits shall be reduced by any amount paid or payable to the employee under any Workmen's Compensation or Occupational or Non-Occupational Disease or Disability Act or similar law (*including, but not limited to, loss of income payments under the Federal Employer's Liability Act* \* \* \*). [Emphasis added.]

ble error in giving an "assumption of risk" instruction over its objection. The instruction informed the jury that the defense of assumption of risk is not available to defendants in FELA actions. *See* 45 U.S.C. § 54. According to the railroad, the instruction was not only irrelevant because the assumption of risk defense had not been raised at trial, but the instruction was also prejudicial because it affected the jury's assessment of Clark's contributory negligence.

Cases discussing the issue have generally condemned the giving of an assumption of risk instruction in FELA actions. *See Heater v. Chesapeake and Ohio Railway,* 497 F.2d 1243, 1249 (7th Cir.1974); *Casko v. Elgin, Joliet and Eastern Railway,* 361 F.2d 748, 751 (7th Cir.1966); *Clark v. Pennsylvania Railroad,* 328 F.2d 591, 592 (2d Cir.1964). "[T]he statutory elimination of the defense of assumption of risk, when read to the jury in FELA cases where that 'defense' has been neither pleaded nor argued, serves only to obscure the issues in the case." *Casko v. Elgin, Joliet and Eastern Railway, supra,* 361 F.2d at 751. Burlington cites no case, however, in which the giving of the assumption of risk instruction in an FELA case was held to be reversible error. In this case, Clark did not request the instruction. Moreover, the jury's finding that Clark was ten percent at fault comports with the evidence in the record and does not demonstrate confusion traceable to the assumption of risk instruction. We therefore decline to reverse on this ground.

■ Finally, Burlington argues the jury verdict is excessive, contrary to the evidence, and should be set aside. In only extremely rare cases will an appellate court invade the jury's prerogative in setting the measure of damages by declaring their verdict to be either excessive or inadequate. *Johnson v. Richardson,* 701 F.2d 753, 758 (8th Cir.1983); *Spears v. Hough,* 458 F.2d 529, 531 (8th Cir.), *cert. denied,* 409 U.S. 878, 93 S.Ct. 130, 34 L.Ed.2d 131 (1972). Despite Clark's return to full-time work for the railroad prior to trial, the injury to his

hand is permanent. His ability to perform tasks both for pleasure and for pay that require fine-tuned finger movement or grasping is limited. Furthermore, during the five years in which he endured eight operations to restore his hand, Clark experienced much physical pain and enough emotional stress to put him in a psychiatric institute. In these circumstances, we do not regard the jury's damage award of $171,121.21[4] to be excessive.

## CONCLUSION

The payments Burlington made to Clark under its voluntary disability plan are deductible from the jury award because the disability plan contemplated a setoff between the benefits and an FELA judgment. It was not reversible error to give an assumption of risk instruction. Finally, the jury verdict is not excessive.

---

4. Minus the $47,268.21 setoff, the award is $123,853.