Morris N. BRICE, Plaintiff,

v.

NATIONAL RAILROAD PASSENGER CORP., Defendant.

Civ. A. No. R–86–721.

United States District Court,
D. Maryland.

March 31, 1987.

Irving Schwartzman, Savage & Schwartzman, P.A., Baltimore, Md., for plaintiff.

Mark J. Daneker, Michael W. Prokopik, Semmes, Bowen & Semmes, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

RAMSEY, District Judge.

Plaintiff, Morris N. Brice, brought this action under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60, (FELA), to recover for personal injuries sustained while working as a carpenter in the employ of defendant, the National Railroad Passenger Corporation (Amtrak). Presently before the Court is defendant's motion in limine to preclude plaintiff from introducing evidence of medical expenses incurred by plaintiff and paid on plaintiff's behalf by defendant. Plaintiff has responded in opposition to defendant's motion. Finding oral argument unnecessary, the Court now rules pursuant to Local Rule 6 (D.Md.1986).

Defendant's motion asserts that plaintiff's medical expenses to date have been paid on his behalf by defendant and that plaintiff is expressly precluded by the terms of the applicable Collective Bargaining Agreement from obtaining a duplicative recovery with regard to medical expenses. Defendant moves this Court to enter an Order precluding plaintiff from introducing any testimony, documentary exhibits, or other evidence respecting bills or expenses for medical care and treatment incurred by plaintiff that have been paid on plaintiff's behalf by defendant. For the reasons discussed below, the Court concludes that plaintiff is not entitled to a duplicative recovery with regard to medical expenses. Plaintiff may nonetheless introduce evidence of his medical expenses, but defendant may respond by introducing evidence of payment.

If an Amtrak employee is injured in the course of his employment with the railroad, the expenses incurred in his treatment and care are covered by the provisions of Group Policy Contract GA–23000 (GA–23000). By its motion, defendant argues that plaintiff may not seek damages for medical expenses that have been paid under GA–23000. Whether or not plaintiff may recover as damages expenses paid under GA–23000 turns on whether GA–23000 is a "collateral source" of recovery.

Generally, a tortfeasor need not pay twice for the damage caused by its tortious conduct, but a tortfeasor may not set off against the amount he owes compensation from a collateral source. *Russo v. Matson Navigation Co.*, 486 F.2d 1018, 1021 (9th Cir.1973). The collateral source rule permits a plaintiff to recover the full

measure of damages, without setoff, even though the plaintiff is also compensated from an independant source such as insurance. *See Clark v. Burlington Northern, Inc.*, 726 F.2d 448, 449 (8th Cir.1984) (citing *Overton v. United States*, 619 F.2d 1299, 1306 (8th Cir.1980)).

■ A number of federal courts have addressed the issue of whether GA–23000 is a "collateral source" of recovery, and they have reached differing results. The area of disagreement lies in determining whether GA–23000 is a fringe benefit provided in partial consideration for the employee's services or whether it is a benefit meant to indemnify an employer against future liability. *See Gonzalez v. Indiana Harbor Belt R.R.*, 638 F.Supp. 308 (N.D. Ind.1986). This distinction is important because the rationale behind the collateral source rule is that there is no double recovery as long as the plaintiff has contributed to the original source of the payments received. *See Thomas v. Penn Central Co.*, 379 F.Supp. 24, 25 (W.D.Pa.1974). If GA–23000 is considered a fringe benefit provided in part consideration for the employee's services, it should be considered a collateral source. If GA–23000 is not a fringe benefit, but is a policy of indemnity against liability for on-duty injuries, it is not a collateral source, and Amtrak is entitled to a setoff.

The policy considerations for the collateral source rule are apparent. On the one hand, an employer-tortfeasor who voluntarily undertakes to indemnify itself against liability by payment into a fund for that purpose, should not be penalized by permitting the plaintiff a double recovery of his benefits under the fund as well as his full measure of damages. On the other hand, where the employer-tortfeasor makes payment directly or indirectly into a fund established for an independent reason, or where such payment by the employer should be considered in the nature of a fringe benefit or deferred compensation, the employer should not be entitled to benefit by setting off such income in mitigation of his responsibility as a tortfeasor.

*Nelson v. Penn Central R.R.*, 415 F.Supp. 225, 226 (N.D. Ohio 1976) (quoting *Haughton v. Blackships, Inc.*, 462 F.2d 788, 791 (5th Cir.1972)).

The FELA contains a provision specifically addressing the propriety of setoffs against FELA damage awards. 45 U.S.C. § 55 provides:

Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void: *Provided*, That in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought.

The language of Section 55 appears broad enough to completely abrogate the common law collateral source rule, but Section 55 has been construed to allow a setoff only when the payments were voluntarily undertaken by the employer to indemnify itself against possible liabilities under the FELA as opposed to payments emanating from a fringe benefit. *See Clark*, 726 F.2d at 450; *Gonzalez*, 638 F.Supp. at 309–10.

■ Thus, whether the issue is application of the common law collateral source rule or the propriety of a set off under 45 U.S.C. § 55, the question remains: Is Group Policy Contract GA–23000 a fringe benefit or a policy of indemnity against liability for on-duty injuries? The mere fact that Amtrak has paid the premiums that support GA–23000 does not establish that GA–23000 is not a collateral source. *Patterson v. Norfolk and Western Ry. Co.*, 489 F.2d 303, 308 (6th Cir.1973). "Application of the collateral source rule depends more upon the character of the benefits than the source of the funds." *Id.*

■ In the instant case, the character of the on-duty injury benefits provided by GA–23000 is not in the nature of a fringe benefit. Prior to the issuance of GA–23000, railroads traditionally provided medical care and treatment for employees who were injured while on duty. *See* Affidavit of Lewis B. Larkin, Jr., attached to defendant's motion, at 7. The on-duty medical benefits provision of GA–23000 insures the railroad against the medical costs they traditionally paid for on-duty injuries, and it is separately funded by the railroad for that purpose. The on-duty medical benefits provision of GA–23000 reduces the effect of paying medical expenses and is, therefore, a policy of indemnity against liability for on-duty injuries. *See Nelson,* 415 F.Supp. at 227 (similar analysis and conclusion). The language of the 1960 Collective Bargaining Agreement negotiated between the various railroads and the collective bargaining representatives of their employees indicates that the separate premiums paid to fund the on-duty injury benefits of GA–23000 were never intended to be wage equivalents or fringe benefits. Thus, the payments received by plaintiff should not be considered compensation from a collateral source, and defendant is entitled to a setoff.

Further support for allowing a setoff is found in a joint Health and Welfare Agreement entered into on October 22,. 1975, between the railroads, represented by the National Carriers' Conference Committee, and their employees, represented by the labor organizations. Article III, Section A of the Health and Welfare Agreement provides as follows:

> In case of an injury or a sickness for which an employee who is eligible for employee benefits under Group Policy Contract GA–23000 and may have a right of recovery against either the employing railroad or a third party tortfeasor (a party who has committed a wrongful act), or both, benefits will be provided under the policy contract subject to the provisions hereinafter set forth. The parties hereto do not intend that benefits provided under the policy contract will duplicate, in whole or in part, any amount recovered from either the employing railroad or a third party tortfeasor for hospital, surgical, medical or related expenses of any kind specified in the policy contract, and they intend that benefits provided under the policy contract will satisfy any right of recovery againt the employing railroad for such benefits to the extent of the benefits so provided. Accordingly,
>
> (1) Benefits provided under the policy contract will be offset against any right of recovery the employee may have against the employing railroad for hospital, surgical, medical or related expenses of any kind specified in the policy contract.

■ This Court agrees with the holding of *Clark v. Burlington Northern, Inc.,* 726 F.2d 448, 451 (8th Cir.1984), that where an employer clearly expresses an intent to make a voluntary benefit plan supplemental to sums recovered under the FELA, setoff is appropriate. *Clark* stated that the employer's manifest intent to avoid double liability must be respected if the collateral source rule is not to swallow up 45 U.S.C. § 55 at the ultimate expense of the employees. *Id.* In the case at bar, the employer manifested its intent to make benefits payable under GA–23000 for on-duty injuries supplemental to sums recovered under the FELA. Plaintiff, therefore, may not obtain a double recovery of medical espenses paid to him under GA–23000. *See Gonzalez,* 634 F.Supp. at 310.

Plaintiff contends that defendant's motion, if granted, would have the effect of exempting defendant from liability for all paid medical bills relating to the occurrence complained of. This, argues plaintiff, would clearly be in contravention of the plain language of Section 55. Such is not the case.

■ In addition to providing for a setoff under appropriate circumstances, Section 55 also renders void any "contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable a common carrier to exempt itself from any liability created by [the FELA]." 45 U.S.C.

§ 55. Group Policy Contract GA–23000 is not a "prohibitive device intended by [defendant] 'to exempt itself from any liability'; rather, it is a method of obtaining funds to pay such liability and would thus not fall within the prohibition of the Statute." *Thomas*, 379 F.Supp. at 27. The purpose of Section 55 is to insure that the employee is compensated to the full extent of his loss. It is not intended to prohibit an employer from indemnifying itself against potential FELA liability as, for instance, by carrying liability insurance coverage. *See Hall v. Minnesota Transfer Ry. Co.*, 322 F.Supp. 92, 95 (D.Minn.1971). This Court has determined that Group Policy Contract GA–23000 is a policy of indemnity against liability for on-duty injuries. Amtrak is not, therefore, prohibited by Section 55 from seeking a setoff.

■ Having concluded that Amtrak is entitled to a setoff, we must determine the appropriate amount to be set off. 45 U.S.C. § 55 apparently provides for a setoff of the premiums paid but not what the premiums bought. *See Blake v. Delaware and Hudson Ry. Co.*, 484 F.2d 204, 205 (2d Cir.1973). *See also Urbaniak v. Erie Lackawanna Ry. Co.*, 424 F.Supp. 981, 982 (W.D.N.Y.1977). Judge Friendly acknowledged that Section 55 entitles the railroad to set off only the premiums, but he indicated that the railroads could avoid this harsh result by "specific provision in the collective bargaining agreement." *Blake*, 484 F.2d at 207 (Friendly, J. concurring). In the present cause, Article III, Section A(1) of the Health and Welfare Agreement is the kind of "specific provision" referred to by Judge Friendly. That provision clearly states that "benefits" provided under GA–23000 will be offset against any right of recovery the employee may have against the railroad for hospital, surgical, medical or related expenses. The full extent of medical "benefits" provided may therefore be set off.

■ Plaintiff is not entitled to a double recovery of medical expenses paid on his behalf through Group Policy Contract GA–23000. The Court will not, however, grant defendant's motion in limine in its entirety.

The amount of medical expenses incurred by plaintiff as a result of the incident involved in this case is relevant to the determination of the full extent and nature of plaintiff's injuries. Therefore, plaintiff may introduce evidence respecting bills or expenses for medical care and treatment incurred. But defendant may introduce evidence that demonstrates the extent to which plaintiff's expenses have been paid.

The mechanics of handling the setoff provided by the plan may be dealt with either by the Court instructing the jury that the amount of benefits provided by the GA–23000 contract must be set off against any damages awarded or by the Court as a matter of law reducing damages awarded by the jury. The Court will consider motions on these mechanics at an appropriate time.

Accordingly, for the reasons stated herein, it is this 31st day of March, 1987, by the United States District Court for the District of Maryland,

ORDERED:

1. That the motion in limine of defendant National Railroad Passenger Corporation is hereby GRANTED IN PART and DENIED IN PART in that plaintiff will be permitted to present evidence as to medical expenses, but defendant will be permitted to present evidence demonstrating the extent to which plaintiff's expenses have been paid.

2. That the Clerk of the Court shall mail copies of this Memorandum and Order to all counsel of record.