William KENDIG

v.

CONSOLIDATED RAIL
CORPORATION.

Civ. A. No. N–86–1766.

United States District Court,
D. Maryland.

July 29, 1987.

Guy M. Albertini, Baltimore, Md., for plaintiff.

Mark J. Daneker, Kenneth X. Warren, and Semmes, Bowen and Semmes, Baltimore, Md., for defendant.

## MEMORANDUM

NORTHROP, Senior District Judge.

Plaintiff, William Kendig, Jr., brought this action under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, seeking damages for on the job injuries sustained while in the employ of defendant Consolidated Rail Corporation ("ConRail"). ConRail now asks the Court to grant a motion in limine precluding plaintiff from introducing at trial any evidence relating to medical expenses incurred by plaintiff which have already been paid for by defendant.

After careful consideration of the pleadings filed by the parties, the Court finds that no hearing is necessary. Local Rule 6. For the following reasons, defendants' motion will be granted to the extent described herein.

Once again this Court is asked to address the applicability of the collateral source rule to medical payments made by the insurer of a railroad employer on to a railroad employee injured while on the job. The Court has previously dealt with this identical issue in two cases, *Poole v. Baltimore and Ohio Railroad Co.*, 657 F.Supp. 1 (D.Md.1985) and *Walton v. National Railroad Passenger Corp. t/a Amtrak*, 673 F.Supp. 744 (D.Md.1986), both of which involved the same collective bargaining agreement and insurance policy present here, Travelers Group Policy No. GA–23000 ("GA–23000"). In those cases, the Court was asked to decide whether medical payments made by the railroads' insurer to the injured employee were governed by the collateral source rule. The outcome hinged on whether such payments were characterized as employee fringe benefits falling within the ambit of the collateral source rule or whether they were indemnification policies not controlled by that rule.

In both *Poole* and *Walton*, the Court examined the face of the collective bargain-

ing agreement and insurance policy and concluded that on the job injury coverage had been given to employees as a fringe benefit. These holdings were influenced by the Court's sense of realities in the labor market and interpretation of authority in other circuits. *See e.g., Clark v. Burlington Northern, Inc.,* 726 F.2d 448 (8th Cir.1984); *Patterson v. Norfolk and Western Railway Co.,* 489 F.2d 303 (6th Cir.1973); *Blake v. Delaware and Hudson Railway Co.,* 484 F.2d 204 (2d Cir.1973).

Despite these previous rulings, the Court is now inclined to re-examine the nature of insurance policy GA–23000 in light of new historical information concerning the adoption and administration of the policy, and recent well-reasoned cases in this district and other circuits dealing with this same issue. *See Brice v. National Railroad Passenger Corp.,* 664 F.Supp. 220 (D.Md. 1987); *Mead v. National Railroad Passenger Corporation t/a Amtrak,* Civil No. Y–86–717 (D.Md. May 26, 1987); *Francis v. National Railroad Passenger Corporation (Amtrak),* 661 F.Supp. 244 (D.Md. 1987); *Folkestad v. Burlington Northern, Inc.,* 813 F.2d 1377 (9th Cir.1987); *Clark v. National Railroad Passenger Corporation,* 654 F.Supp. 376 (D.D.C.1987).

The traditional collateral source rule dictated that a plaintiff's recovery against a tortfeasor for negligence not be diminished by payments received by the plaintiff from a collateral source. The rule is based upon the notion that no double recovery occurs if the plaintiff has in some sense contributed to the original source of the collateral payment. *See Restatement of Torts, Second,* § 920A (1979). To determine whether the rule applies in a particular case, a court must examine the "purpose and nature of the fund and of the payments" received to determine whether the payment constitutes a sort of fringe benefit earned by the employee or whether it is meant solely to indemnify the employer against future liability. *See Folkestad v. Burlington Northern, Inc.,* 813 F.2d 1377 (9th Cir.

1987); *Haughton v. Blackships, Inc.,* 462 F.2d 788 (5th Cir.1972); *Clark v. National Railroad Passenger Corporation,* 654 F.Supp. 376, 377 (D.D.C.1987).

In this case, plaintiff's medical bills were paid for on behalf of the defendant railroad under Travelers Group Policy No. GA–23000. The operative collective bargaining agreement, pursuant to which this policy is issued, provides that eligible sick or injured employees who "may have a right of recovery against either the employing railroad or a third part tortfeasor" are entitled to receive payments. The bargaining agreement goes on to state specifically that:

> The parties hereto do not intend that benefits provided under the policy contract will duplicate, in whole or in part, any amount recovered from either the employing railroad or a third party tortfeasor for hospital, surgical, medical or related expenses of any kind specified in the policy contract, and they intend the benefits provided under the policy contract will satisfy any right of recovery against the employing railroad for such benefits to the extent of the benefits provided.

National Health and Welfare Agreement, Art. III, § A (October 22, 1975).

Largely on the strength of this provision, some courts have found that a policy GA–23000 does not constitute a fringe benefit for employees. *See Clark,* 654 F.Supp. at 378 *Mead v. National Railway Passenger Corp.,* Civil No. Y–86–717, slip op. at 4–5. As previously stated in *Poole,* this Court does not find that the language of the bargaining agreement alone illuminates the character of the benefit.

In *Poole,* the Court looked to the realites of the labor market for assistance in ascertaining the nature of the benefit provided under GA–23000. In this case, however, additional evidence has been provided to aid the Court. Defendant has submitted the affidavit of Lewis B. Larkin, Jr., Employee Benefits Director for the National Railway Conference,[1] which furnishes the

---

1. The National Railway Conference is an association of roads which was organized in 1963 to deal with labor relations matters between member railroads and their employees.

Court with a detailed history of the creation and administration of the on-duty injury benefit component of GA–23000.

Larkin's affidavit reveals that the on-duty insurance portion of GA–23000 was administered in a manner different than other benefit provisions provided under the plan, such as life insurance, sickness benefits, and accident benefits, unrelated to on-duty injuries. A careful separation was maintained between the on-duty benefits and these other benefits which were clearly intented to be fringe benefits given in lieu of compensation. The two categories received separate funding and experience ratings. The railroad possessed a degree of control over the on-duty benefits not exercised over fringe benefits. For example, unlike other benefit rates, the on-duty premium rate was negotiated directly between the railroad and the insurance company without union participation. Similarly, the railroad was given sole control over premium refunds arising from on-duty benefit experience. By comparison, refunds growing out of other than on-duty injury were placed into an account for use at the joint direction of the railroad and the union. After considering the different treatment accorded these two categories of benefits, the Court is convinced that the on-duty benefits provision was conceived and administered as policy of indemnification rather than employee compensation. Hence, the Court finds that the on-duty benefit provision does not fall within the purview of the collateral source rule and plaintiff is not entitled to receive a double recovery of medical expenses paid on his behalf through GA–23000.

While the Court holds that a set-off of funds paid by defendant railroad for plaintiff's medical expenses is appropriate, the Court will not bar plaintiff from presenting evidence relating to medical expenses. Such evidence is relevant to a determination of the extent and nature of plaintiff's injuries. *Brice,* 664 F.Supp. 220, 224; *compare Francis,* 661 F.Supp. 244, 245. While plaintiff will be permitted to introduce evidence relating to bills or expenses for medical care or treatment incurred as a result of his on-duty injury; defendant may counter with evidence demonstrating the extent to which such expenses have already been paid for on its behalf.