Barbara J. PERRY, Administratrix of
the Estate of Jack J. Williams,
Pauline Williams,

v.

**METRO-NORTH COMMUTER
RAILROAD, Henry G.
Schmidt.**

Civ. No. N-87-442 (PCD).

United States District Court,
D. Connecticut.

April 3, 1989.

Stephen G. Friedler, Friedler, Kaplan &
Harper and William F. Gallagher, New Haven, Conn., for plaintiffs.

Patrick J. Flaherty (MNCRC), Cooney,
Scully & Dowling and Elizabeth DiBiaso
Fairbanks, Hartford, Conn., for defendants.

## RULING ON DEFENDANT METRO–NORTH COMMUTER RAILROAD'S MOTION IN LIMINE

DORSEY, District Judge.

Plaintiffs, the widow and the personal representative of Jack J. Williams, seek damages under the Federal Employers' Liability Act ("FELA") for injuries and death suffered by Mr. Williams allegedly as a result of the negligence of his employer, defendant Metro–North Commuter Railroad ("Metro"). *See* 45 U.S.C. §§ 51–60. Pending is Metro's motion in limine to preclude plaintiff from:

A. Introducing evidence of medical bills and expenses incurred by decedent and paid on his behalf by Metro.

B. Introducing a photograph album which purportedly depicts decedent and his family life.

C. Referring, in the presence of the jury, to the FELA as plaintiffs' "only source of recovery," or in similar terms.

### A. *Medical Expense Evidence*

Metro asserts that decedent's medical expenses were paid by it on his behalf. It seeks to establish, as a matter of law, that plaintiffs are not entitled to double recovery for these expenses. Therefore, Metro concludes that evidence of the medical expenses so paid is irrelevant to any issue of damages and should be excluded.

■ Generally, a tortfeasor need not pay twice for damages caused by his tort, but is not entitled to set off, against his ultimate liability, payments from a collateral source. The "collateral source" rule of common law "permits a plaintiff to recover the full measure of his damages, without setoff, even though the plaintiff is also compensated from an independent source such as insurance." *Brice v. National R.R.*, 664 F.Supp. 220, 221–22 (D.Md.1987). This rule is modified in FELA cases by 45 U.S.C. § 55, relating to the measure of damages:

Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void: *Provided,* That in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to any injured employee or the person entitled thereto on account of the injury or death for which said action was brought.

45 U.S.C. § 55. *See Blake v. Delaware & Hudson Ry.,* 484 F.2d 204, 205 (2d Cir. 1973); *Folkestad v. Burlington Northern, Inc.,* 813 F.2d 1377, 1379–81 (9th Cir.1987) (discussing relationship between common law rule and § 55). The rule which has emerged from the interaction of § 55 and the collateral source doctrine is that the availability of a set off turns not on whether the employer is the source of the payments, but on whether they constitute fringe benefits secured by the employee through his labor, or are a "contribution" against FELA liability. *See Blake,* 486 F.2d at 206; *Folkestad,* 813 F.2d at 1381; *Brice,* 664 F.Supp. at 222. With respect to payments made pursuant to an insurance policy funded entirely by the employer:

The problem that has troubled the courts has been whether to treat the insurance as a fringe benefit in part compensation for the employee's work. If it is viewed as the product of the employee's labors, it is deemed to come from a source collateral to the employer/tortfeasor rather than from the employer/tortfeasor itself. Set off would permit avoidance of FELA liability, and such avoidance is prohibited by [§ 55]. If, on the other hand, the insurance is viewed as a contribution by the employer intended to fulfill FELA obligations, it would appear to fall within the proviso [of § 55] and set off would be permitted.

*Folkestad,* 813 F.2d at 1381. This rule may lead to double recovery by the employee, even where the payments originate ulti-

mately with the employer. However, courts have generally accepted the view that "[i]f the railroads wish to avoid the harsh result [constrained by the statute], ... they can accomplish this by specific provision in the collective bargaining agreement." *Blake*, 484 F.2d at 207 (Friendly, J., concurring).

Metro contends that it has "self-insured" its FELA liability and that its payments should be set off under these principles. Prior to 1983, Metro's predecessor (Conrail) provided medical benefits to employees under Travelers Insurance Company Group Policy GA–23000. Presently, however, Metro's group insurance coverage does not extend to on-the-job accidents. The collective bargaining agreement now in effect requires the railroad to continue to provide the same major medical benefits the employees had under GA–23000 at no cost to employees. This is a general benefit, not one restricted to medical costs arising from circumstances which give rise to FELA claims. Metro argues that, because several courts have held that payments from GA–23000 to injured employees were not collateral and may be set off, its "self-insured" payments, which replaced GA–23000, should be accorded similar treatment. *See, e.g., Folkestad*, 813 F.2d 1377; *Clark v. Burlington Northern, Inc.*, 726 F.2d 448 (8th Cir.1984); *Brice*, 664 F.Supp. 220; *but see Blake*, 486 F.2d at 206, 207. However, those cases cited relied heavily on express language in the applicable collective bargaining agreement characterizing the payments as indemnity for FELA liability or as agreed to be set off; and to a lesser extent on a factual showing that on-the-job injury payments had been so treated. *See Folkestad*, 813 F.2d at 1379 n. 2, 1383 and n. 6; *Brice*, 664 F.Supp. at 223; *Kendig v. Consolidated Rail Corp.*, 671 F.Supp. 1068, 1069–70 (D.Md.1987) (relying on both collective bargaining language and employer's treatment of fund from which payments were made). The

exception was where the injured employee had signed stipulations providing for a set off and the employer's disability benefit plans expressly provided that payments under the FELA would be set off against benefits. *Clark*, 726 F.2d at 449, 451.

 Here, defendant has not shown any of these factors which would take the payments out of the collateral source rule, where *Blake* seemingly would place it. The only portion of the collective bargaining agreement proffered states:

> RULE 66—HEALTH AND WELFARE BENEFITS, LIFE INSURANCE, EARLY RETIREMENT, MAJOR MEDICAL EXPENSE BENEFITS, DENTAL BENEFITS *AND OFF-TRACK VEHICLE ACCIDENT BENEFITS*
>
> Health and welfare benefits, life insurance, early retirement, major medical expense benefits and dental benefits for employees subject to this agreement shall be provided for by the Company under Blue Cross and Metropolitan Life and shall be the same as those set forth in Railroad Employees' National Health and Welfare Plan Group Policy Contract GA–23000, GA–46000, as amended, and Aetna Group Policy Contract GF–12000, as amended, at no cost to the employees. *Off-track vehicle accident benefits shall be provided as set forth in Article V of the National Agreement of February 25, 1971, as amended, between the Carriers' Conference Committee and BRAC [the Union].*

Defendants' Exhibit [2] (emphasis added). On its face, this provision suggests that the payments in this case were required as a fringe benefit, without reference to FELA liability. There is no indication as to what provision was made in the referenced "National Agreement" which might alter that inference. Clearly, Metro has not established the "specific provision" required by *Blake*.[1]

---

1. Judge Friendly's concurrence was necessary to the judgment in *Blake* and the reasoning appears to bind this court. Moreover, the court notes that *Blake* itself dealt with payments made directly by the employer to the employee for

which the employer was reimbursed through Group Policy GA–23000. To the extent Metro's "self-insurance" is merely a replacement of GA–23000, and the accident benefits are required by

Metro also relies upon a "Group Insurance Program" document allegedly given to its employees, which states in part:

## ON THE JOB INJURY

In case of an injury or a sickness for which a covered employee may have a right of recover against Metro–North, that employee should submit all bills to Metro–North's Claims Department.

Defendants' Exhibit [3]. However, this cryptic direction is far from the express disability plan provision for set off found sufficient in *Clark*. It is a procedural instruction and not a substantive provision. Nor has the employee stipulated to set off. Given the holding of *Blake* and the absence of an express provision in the bargaining agreement, the employer's unilateral statement would not control as to the character of the payments. Metro cannot be allowed to secure unilaterally what it could have, but did not, secure by collective bargaining.[2] Therefore, Metro has not shown that it is entitled to a set off for payment of the medical expenses. Plaintiffs may properly prove the expenses themselves as an element of damages. The motion to preclude evidence of the expenses is denied.[3]

B. *Photograph Album*

■ Metro moves to preclude evidence in the form of a photograph album which apparently depicts decedent and his family lifestyle. Plaintiff Williams offers the album as relevant to her claim for loss of consortium. However, in an action under FELA, the measure of recovery is " 'the damages ... [that] flow from the deprivation of the pecuniary benefits which the beneficiaries might have reasonably received,' " *Norfolk & Western R.R. v. Liepelt*, 444 U.S. 490, 493, 100 S.Ct. 755, 757, 62

L.Ed.2d 689 (1980), quoting *Michigan Central R.R. v. Vreeland*, 227 U.S. 59, 70, 33 S.Ct. 192, 196, 57 L.Ed. 417 (1913), together with damages for the conscious pain and suffering of the injured person while he lived. *St. Louis, Iron Mountain & Southern R.R. v. Craft*, 237 U.S. 648, 35 S.Ct. 704, 59 L.Ed. 1160 (1915); *Great Northern R.R. v. Capital Trust Co.*, 242 U.S. 144, 37 S.Ct. 41, 61 L.Ed. 208 (1916). This principle excludes damages for loss of consortium or relationship. *New York Central & H. R.R. v. Tonsellito*, 244 U.S. 360, 37 S.Ct. 620, 61 L.Ed. 1194 (1917); *Michigan Central R.R.*, 227 U.S. at 71, 73–74, 33 S.Ct. at 196, 197. Although plaintiffs argue that *American Export Lines, Inc. v. Alvez*, 446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284 (1980), has re-opened the question, the court does not agree. *Alvez* held that the Jones Act and the Death on the High Seas Act do not preclude a loss of consortium claim under general maritime law. *Alvez*, which was based on the historical liberality of maritime law and an interpretation of the two statutes there involved, does not authorize a departure from *Vreeland* and *Tonsellito*. *See Kelsaw v. Union Pacific R.R.*, 686 F.2d 819 (9th Cir.1982), *cert. denied*, 459 U.S. 1207, 103 S.Ct. 1197, 75 L.Ed.2d 440 (1983). As there can be no claim for loss of consortium, that portion of the complaint which asserts such a claim is dismissed and no evidence will be admitted for that purpose.

■ Plaintiffs have also offered the photo album as relevant to (1) conscious pain and suffering of decedent; (2) lost earning capacity; and (3) services, of pecuniary value, he could have performed for his wife. The photographs, after proper foundation and if not unduly duplicative of other

---

the collective bargaining agreement quoted in the text, the analogy to *Blake* is nearly exact.

**2.** Metro does not substantiate its claim that it treated the payments as originating from a "self-insurance" fund by showing, for example, that it estimated contingent FELA liability and carried a reserve for that purpose.

**3.** Should Metro prove, at trial, collective bargaining language which would satisfy *Blake* and

permit a set off, evidence of medical expenses might yet be admissible to show the extent and nature of decedent's injuries and suffering, while permitting Metro to show payment. *See Kendig*, 671 F.Supp. at 1070; *Brice*, 664 F.Supp. at 224; *but see Francis v. National R.R.*, 661 F.Supp. 244, 245 (D.Md.1987). At this point, it is unnecessary to reach either that issue or whether the question of set off would be for the jury or the court. *See Brice*, 664 F.Supp. at 224.

proof, may be admissible for these purposes. Any prejudicial sympathy will be avoided by bifurcation of the trial of liability and damages issues, which is hereby ordered. Unfortunately, neither party has provided the court with the photographs at issue. They cannot be evaluated en masse or in the abstract, but must be scrutinized individually and in context for their probative value and for any tendency they might have to mislead the jury. Accordingly, the motion in limine is denied as to the album, subject to plaintiffs' ability to make an offer of proof which satisfies these concerns prior to admission of the photo album into evidence.

C. *Argument and References to the FELA*

Defendant argues that statements of plaintiffs' counsel to the effect that the FELA is the "only remedy or recovery of damages" in this case, under the circumstances, would be misleading to the jury and prejudicial to Metro. The court agrees; however, the court will not be placed in the position of prior censorship of each attorney's statements before the jury, based on speculation as to what might be said. Counsel are experienced trial lawyers and it is assumed that they will conduct themselves professionally. If they do not, curative measures will be taken at trial. The motion is denied as to statements of counsel.

SO ORDERED.