**Robert BRADY**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION.**

**Civ. No. N–87–413(AHN).**

United States District Court,
D. Connecticut.

June 13, 1989.

Charles Goetsch, New Haven, Conn., for plaintiff.

David Ryan, Robinson & Cole, Hartford, Conn., for defendant.

RULING ON DEFENDANT'S MOTION TO SET OFF DISABILITY BENEFITS RECEIVED BY THE PLAINTIFF

NEVAS, District Judge.

Robert Brady brought this action against the National Railroad Passenger Corporation ("Amtrak") under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. Sections 51 *et seq.*, claiming damages for injuries he sustained while working as a general foreman for Amtrak. A jury found Amtrak liable and awarded Mr. Brady damages in the amount of $1,581,116. The court stayed the entry of judgment pending the disposition of the issues raised by the instant motion.[1] For the reasons set forth

---

1. The issue of disability benefits was initially raised by plaintiff's motion in limine, seeking to preclude the admission at trial of evidence that such benefits had been and would continue to be paid to Brady. The court reserved decision

on that motion insofar as it sought to set off the disability benefits against the FELA damages, if any, to be awarded against the railroad. The action was tried without evidence being presented on disability payments, past or future. Am-

below, the motion is granted in part and denied in part.

## Discussion

Like any tortfeasor, a railroad "need not pay twice for damages caused by [its] tort." *Perry v. Metro–North Commuter R.R.*, 716 F.Supp. 61, 62 (D.Conn.1989). *See Blake v. Delaware & Hudson Ry.*, 484 F.2d 204, 207 (2d Cir.1973) (Friendly, J., concurring) (permitting plaintiff to recover from railroad for medical expenses already paid by the railroad is "shockingly unjust"). In an action brought under the FELA, a "common carrier may set off [ ] any sum it has contributed or paid to an insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought." 45 U.S.C. Section 55. *See Clark v. Burlington N., Inc.*, 726 F.2d 448, 450–51 (8th Cir.1984) (disability benefits); *Blake*, 484 F.2d at 205 (medical benefits); *Folkestad v. Burlington N., Inc.*, 813 F.2d 1377, 1379–81 (9th Cir.1987) (medical benefits); *Perry*, slip op. at 2 (medical benefits). Despite its broad language, section 55 has been construed to allow set off only where the payments in question constitute a "contrubution" by the railroad "against possible liabilities to injured employees under the FELA." *Blake*, 484 F.2d at 206. *See also Clark*, 726 F.2d at 450; *Perry*, slip op. at 3.

■ Benefits paid to an injured employee are exempt from set off under Section 55 when they are deemed to have come from a "collateral source," independent from the employer/tortfeasor. Payments under an employer-funded insurance plan may still be treated as "collateral" if they are determined to be "fringe benefits secured by the employee through his labor." *Perry*, slip op. at 3.

The problem that has troubled the courts has been whether to treat the insurance as a fringe benefit in part compensation for the employee's work. If it is viewed as the product of the employee's labors, it is deemed to come from a source collateral to the employer/tortfeasor rather than from the employer/tortfeasor itself. Setoff would permit avoidance of FELA liability, and such avoidance is prohibited by section [55]. If, on the other hand, the insurance is viewed as a contribution by the employer intended to fulfill FELA obligations, it would appear to fall within [section 55], and setoff should be permitted.

*Folkestad*, 813 F.2d at 1381. In distinguishing a fringe benefit from a benefit intended to indemnify an employer against future liability, courts must "look to 'the purpose and nature of the fund and of the payments and not merely at their source.' " *Id.* (quoting *Russo v. Matson Navigation Co.*, 486 F.2d 1018, 1020 (9th Cir.1973)). *See Clark*, 726 F.2d at 451 ("[The] employer's manifest intent to avoid double liability in offering disability plans must be respected if the collateral source rule is not to swallow up 45 U.S.C. Section 55 at the ultimate expense of employees."). The specific provisions of the benefits plan may be determinative of the issue. *See id.* at 451 (eighth circuit upheld denial of set off on the basis of explicit language within the disability plans providing that money paid or payable under the FELA reduces the benefits allowable). *See also Blake*, 484 F.2d at 207 (Friendly, J., concurring) ("If the railroads wish to avoid the harsh result [of double liability], they can accomplish this by specific provision in the collective bargaining agreement.").

### 1. *Short Term Disability Benefits*

Mr. Brady received $13,289.25 in short term disability benefits from Amtrak. This sum was paid to him *directly* from Amtrak pursuant to its short term disability program. There is no dispute that these benefit payments are subject to set off under 45

trak subsequently filed this motion to set off the disability benefits against the damages awarded by the jury.

U.S.C. Section 55.[2] Therefore, the motion for setoff is granted to the extent that it reduces the jury award of $1,581,116 by the sum of $13,289.25.

### 2. *Long Term Disability Benefits*

■ Amtrak contends that the long term disability payments to Mr. Brady made under its group insurance plan with Connecticut General Life Insurance Company ("CIGNA") must also be set off against the FELA verdict. Under the CIGNA plan, Mr. Brady has received and will continue to receive, until the age of 65, disability benefits equal to 60% of his monthly earnings. CIGNA administers the plan but Amtrak pays all of the premiums.

Amtrak relies heavily on the fact that the disability benefits at issue are wholly employer-funded to establish that they do not emanate from a "collateral source." However, "courts have been virtually unanimous in their refusal to make the source of the premiums the determinative factor in deciding whether the benefits should be regarded as emanating from the employer or from a 'collateral source.'" *Folkestad,* 813 F.2d at 1381. *See also Blake,* 484 F.2d at 206 ("Application of the collateral source rule depends less upon the source of funds than upon the character of the benefits received.") (citation omitted). Amtrak's argument that the source of the benefit funds continues to be the determinative factor in applying 45 U.S.C. Section 55 is unpersuasive.

The court is in agreement with counsel that *Clark* is the most instructive of the authorities presented in resolving the instant matter. There, the benefits plan in question explicitly provided that payments under the FELA would be set off against benefits. 726 F.2d at 451 n. 3. The court interpreted these provisions to "manifest [defendant's] intent to avoid double liability" under the FELA. *Id.* at 451. In addition, the plaintiff had entered into stipulations with the defendant railroad providing that the benefits received by him would be

deducted from any settlement or other payment based on his injuries. *Id.* at 449.

In the instant case, there is no specific language in the CIGNA policy which manifests Amtrak's intent that the disability plan be supplemental to a recovery under the FELA. In fact, the provisions of the policy support the opposite conclusion. The policy states in pertinent part that:

[The beneficiary's] Monthly Income Benefit will be reduced by any lump sum payment provided under or on account of any workmen's compensation *or similar law* on account of [his] disability, including amounts realized in conjunction with any compromise or release of claim under such law. Any lump sum payment will be considered to have been payable in monthly payments equal to the amount [he] would have received under the applicable law if there had been no lump sum award, and will reduce Monthly Income benefits until completely exhausted. Any lump sum payment will be considered to have been made solely for loss of income unless [he] submit[s] evidence to the contrary acceptable to Connecticut General.

Defendant's Objection to Plaintiff's Motion in Limine Regarding Disability Benefits, Exh. A (emphasis added). This set off provision expressly includes "workmen's compensation or similar law" but fails to mention the FELA. This omission suggests by negative implication that the disability benefits are *not* reduced by FELA judgments. The implication is strengthened by the fact that the terms of the CIGNA policy were drafted in accordance with Amtrak's wishes. If the railroad intended to avoid paying both disability insurance and FELA judgments, it could have "accomplish[ed] this by specific provision" in the insurance policy. *See Blake,* 484 F.2d at 207 (Friendly, J., concurring). The only "specific provision" found in the CIGNA policy fails to express such an intent.

---

**2.** Plaintiff's counsel conceded at oral argument that the collateral source rule does not apply to

the short term disability payments by Amtrak.

The court rejects the view that Amtrak intended the FELA to be included within the policy's set off provision as "workmen's compensation or similar law." The FELA is not workmen's compensation. Nor can it be readily seen as "similar" to workmen's compensation. While workmen's compensation statutes and the FELA are both remedial in purpose, they differ in most other material respects. It is difficult to imagine that the railroad, whose familiarity with the FELA must be presumed, would employ such an ambiguous device to protect itself from double liability under the FELA. If it intended that the FELA payments be set off against the benefits provided for in the plan, it should have said so in the plan.

The court's conclusion that the disability benefits were not intended to be supplemental to sums recovered under the FELA is further demonstrated by the incongruous result which would be produced by interpreting the CIGNA policy to include payments under the FELA within its set off provision. If the express language immediately following the set off provision were read to cover lump sum payments awarded under the FELA, then no set off would be available. According to that language, set off is only possible if the "applicable law" allows for recovery other than in lump sum payments. Since the FELA allows recovery *only* in lump sum payments, the amount to be set off against the benefits— that is, "the amount [plaintiff] would have received under the [FELA] if there had been no lump sum award"—would be nothing. Leaving no amount to be set off from the benefits allowable, the set off provision as so construed would be rendered meaningless.

Because the CIGNA policy lacks any reference to the FELA and because its express language suggests that FELA payments were not intended to be set off against the disability benefits, the court finds that the long term disability payments to Mr. Brady are not subject to set off under 45 U.S.C. Section 55.

*Conclusion*

For the foregoing reasons, the motion is granted in part to set off the short term benefits against the FELA verdict and is denied in part as it relates to setting off the long term disability benefits. The Clerk of the Court is directed to enter judgment in favor of the plaintiff in the amount of $1,567,826.75.

SO ORDERED.