Edward **MANES**

v.

## METRO–NORTH COMMUTER RAILROAD.

### No. N–90–383 (AHN).

United States District Court,
D. Connecticut.

July 15, 1992.

---

Charles Goetsch, New Haven, Conn., for plaintiff.

Patrick Flaherty, Hartford, Conn., for defendant.

## RULING ON DEFENDANT'S MOTION FOR A NEW TRIAL

NEVAS, District Judge.

This is a negligence action brought by Edward Manes ("Manes") against the Metro–North Commuter Railroad (the "Railroad") pursuant to the Federal Employers' Liability Act (FELA), 45 U.S.C. § 56 *et seq.* The action arises from an accident on February 6, 1990 in which Manes fell off the Cos Cob railroad bridge into water below while employed by the Railroad. At trial, the jury returned a verdict for Manes and awarded him $1,097,701.21 in damages. Following the trial, the court entered judgment accordingly. The Railroad now moves this court to set aside the judgment and grant a new trial pursuant to Rule 59(a), Fed.R.Civ.P. For the reasons below, the court denies the Railroad's motion.

### Discussion

The Railroad moves for a new trial on the following grounds: (1) the jury's verdict is inconsistent and irreconcilable; (2) the court erred in instructing the jury that the Occupational Safety and Health Act (OSHA), 29 U.S.C. §§ 651 *et seq.* and corresponding regulations apply to the Cos Cob railroad bridge; (3) the court erred in admitting evidence of medical expenses incurred by Manes up to the time of trial; (4) the court erred in failing to instruct the jury that mere presence of frost and ice on the bridge is not, by itself, proof of negligence; (5) the court erred in failing to instruct the jury to consider whether Manes intentionally jumped from the bridge and refusing to submit an interrogatory to the jury on that issue; (6) the court erred in permitting officer Chiarito to testify as to statements made to him by Manes at the hospital following the accident on the grounds that such statements were inadmissible hearsay; and (7) the court erred in refusing to take judicial notice of life expectancy tables submitted by the Railroad.

On a motion for a new trial, the moving party bears the heavy burden of convincing the court that "the jury has reached a seriously erroneous result or that its verdict is a miscarriage of justice." *Purnell v. Lord,* 952 F.2d 679, 685 (2d Cir.1992); *see also Smith v. Lightning Bolt Prod., Inc.,* 861 F.2d 363, 370 (2d Cir.1988); *Newmont Mines Ltd. v. Hanover Ins. Co.,* 784 F.2d 127, 132 (2d Cir. 1986); *Mallis v. Bankers Trust Co.,* 717 F.2d 683, 691 (2d Cir.1983). The court is not free to disregard a jury verdict " 'unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done.' " *Olson v. Bradrick,* 645 F.Supp. 645, 654 (D.Conn.1986), (quoting 11 C. Wright & A. Miller, *Federal Practice and Procedure,* § 2803 (1973 & Supp.1991) ("Wright & Mill-

er")); *see also Milos v. Sea–Land Serv. Inc.,* 478 F.Supp. 1019, 1021 (S.D.N.Y. 1979), *aff'd,* 622 F.2d 574 (2d Cir.), *cert. denied,* 449 U.S. 954, 101 S.Ct. 360, 66 L.Ed.2d 219 (1980). The burden is a particularly heavy one in which the evidence put before the jury must be viewed in the light most favorable to the non-moving party and all inferences are drawn in favor of that party. *Newmont Mines,* 784 F.2d at 132.

■■■ When considering a motion for a new trial, moreover, the court exercises "a mature judicial discretion" by reviewing the verdict in the overall setting of the trial, evaluating the character of the evidence and the complexity of the legal principles that the jury was obligated to apply to the facts, and abstaining "from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result." *Bevevino v. Saydjari,* 574 F.2d 676, 684 (2d Cir.1978). Finally, a motion for a new trial is left to the sound discretion of the trial court and a denial of that motion will only be overturned on appeal if found to be a clear abuse of the trial court's discretion. *Purnell,* 952 F.2d at 686; *Newmont Mines,* 784 F.2d at 132. Applying these rules, the court finds that the grounds set forth by the Railroad in support of its claim for a new trial do not provide a sufficient basis to warrant a new trial.

## A. The Jury Verdict

■■■ The centerpiece of the Railroad's claim for a new trial is its contention that the jury's verdict is inconsistent and irrec-

oncilable as a matter of law. Specifically, the Railroad contends that the jury's award of damages for past and future lost earnings and past and future medical expenses is inconsistent and irreconcilable with its failure to award damages for past and future pain and suffering, loss of enjoyment of life, and fear of the future. The Railroad insists that the jury's finding on damages was made pursuant to special interrogatories which make the verdict a "special verdict" governed by Rule 49(a), Fed. R.Civ.P., rather than a general verdict pursuant to Rule 49(b), Fed.R.Civ.P. The Railroad contends that the granting of a new trial is the preferred method of resolving inconsistencies in special verdicts in contrast to general verdicts where the court should go to great lengths to resolve the inconsistencies itself. Accusing the jury of an "abdication of their [sic] responsibility and a blatant disregard of the court's legal instructions regarding the burden of proof," the Railroad concludes that the jury's verdict was "hopelessly irreconcilable" to the "extent [that] there has been no legal verdict in this case" and, therefore, a new trial is mandated by law. (*See* Filing No. 104, Def.'s Mem.Supp.Mot.New Trial at 5, 10). The court disagrees.

■■■ As a preliminary matter, the court notes that the parties disagree on whether the jury's verdict was a special verdict governed by Rule 49(a) or a general jury verdict governed by Rule 49(b). Because the court believes that the Railroad's claim fails under either standard, however, the court need not formally resolve this issue.[1] *See City of Richmond, Va. v. Mad-*

---

1. The court finds the Railroad's contention that the verdict is a "special" verdict governed by Rule 49(a) difficult to accept. Rule 49(b) states that the "court may submit to the jury, together with appropriate forms for a *general verdict,* written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict." Rule 49(b), Fed.R.Civ.P. (emphasis added). Despite its inadvertent labeling of the verdict form as "Special Verdict Form", (*see* Filing No. 100, Verdict Form), the court believes that the interrogatories, when viewed in the context of the jury instructions, clearly constitute the submission of written interrogatories upon one or more issues of fact the decision of which was necessary to the rendering of a gen-

eral verdict. *See e.g., Lockard v. Missouri Pacific R. Co.,* 894 F.2d 299, 304 (8th Cir.) (inconsistent answers to special interrogatories in FELA action governed by Rule 49(b)), *cert. denied,* —— U.S. ——, 111 S.Ct. 134, 112 L.Ed.2d 102 (1990); *Ressler v. States Marine Lines, Inc.,* 517 F.2d 579, 582 (2d Cir.) (analysis of inconsistency in jury answer to interrogatory on damages governed by Rule 49(b), a general verdict accompanied by interrogatories), *cert. denied,* 423 U.S. 894, 96 S.Ct. 193, 46 L.Ed.2d 126 (1975); *Feldmann v. Connecticut Mut. Life Ins. Co.,* 142 F.2d 628 (8th Cir.1944) (record disclosed that answer to interrogatory considered a composite of law and fact determined the *general* verdict.)

*ison Management Group, Inc.,* 918 F.2d 438, 458 n. 20 (4th Cir.1990).

■ First, the court fails to comprehend how the Railroad, the *defendant* in this case, is in any way harmed by the jury's failure to award additional damages for pain and suffering to the *plaintiff,* Manes. Ironically, such a failure served to decrease, rather than increase, the Railroad's financial liability. Absent a deviation from the court's settled course of procedure, " 'as a general rule, . . . the court will not allow a party to rely on anything as cause for reversing a judgment which was for [its] advantage.' " *Mansfield, C. & L.M.R. Co. v. Swan,* 111 U.S. 379, 383, 4 S.Ct. 510, 512, 28 L.Ed. 462 (1884) (citation omitted); *see also American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 18 n. 17, 71 S.Ct. 534, 542 n. 17, 95 L.Ed. 702 (1951).

The court notes that the cases relied on by the Railroad all involved challenges to jury verdicts by dissatisfied plaintiffs not defendants. *See e.g. Brooks v. Brattleboro Memorial Hosp.,* 958 F.2d 525, 526 (2d Cir.1992) (plaintiff's cross-appeal for a new trial based on contention that failure of jury to award damages for pain and suffering while awarding damages for full medical expenses constitutes an irreconcilable inconsistency in verdict); *Martin v. Payton,* 20 F.R.D. 200 (W.D.Ky.1957) (evaluating plaintiff's motion for a new trial on grounds that jury's failure to award damages for pain and suffering constitutes an inadequate verdict); *Johnson v. Franklin,* 112 Conn. 228, 152 A. 64 (1930) (same). The court, moreover, is not aware of any case, nor has the Railroad cited such a

case, in which a dissatisfied defendant successfully challenged a jury verdict as legally defective for its failure to award a plaintiff damages for pain and suffering. Indeed, the Eighth Circuit expressly rejected a similar challenge to a plaintiff's verdict by a FELA defendant stating: "any prejudice resulting from an inconsistent verdict or the entry of judgment thereon lies solely with the plaintiff who did not raise the issue below, and has not appealed the judgment." *Lockard v. Missouri Pacific R. Co.,* 894 F.2d 299, 305 (8th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 134, 112 L.Ed.2d 102 (1990).

The court finds unpersuasive the Railroad's argument that the jury's refusal to award pain and suffering somehow implicates the finding of general liability so as to invalidate the entire verdict. The court finds it difficult, if not impossible, to believe that a jury which awarded a plaintiff in excess of a million dollars in damages would somehow eliminate that award, let alone find for the Railroad on the issues of negligence and general liability, simply because the jury chose to limit the plaintiff's recovery to medical expenses and lost wages. Indeed, the jury instructions admonished the jury to only consider the issue of damages if necessary after first determining the defendant's liability, if any. (*See* Filing No. 99, Jury Charge, at 37.) The charge, therefore, prohibited the jury from considering an allocation of damages unless it had first found the Railroad negligent.

■ Second, the Railroad never objected to the jury's verdict when announced by

---

In determining whether a verdict is "general" or "special", the court looks to two factors, its own intent and the substantive charge given. *See Stanton v. Astra Pharmaceutical Prod.,* 718 F.2d 553, 574 (3rd Cir.1983). Here, the court states for the record that its intent was to instruct the jury to issue a "general" verdict pursuant to Rule 49(b). The substantive jury instructions, moreover, clearly reflect this intent. Specifically, the court instructed the jury to "apply [the] law to the facts as you find them," (Filing No. 99, Jury Charge at 1 ("Jury Charge")), language, the court believes, is consistent with the definition of a general verdict. *See Walker v. New Mexico & S. Pac. R.R.,* 165 U.S. 593, 596, 17 S.Ct. 421, 422, 41 L.Ed. 837 (1897); *Black's Law*

*Dictionary* at 1399 (5th ed. 1979) (defining general verdict as verdict where jury applies the law to the facts as distinguished from a special verdict where jury finds only facts). The court also instructed the jury to make a general finding of liability before making specific factual findings concerning the amount of damages: "[i]t is exclusively your function to decide upon liability, and I am instructing you on damages only so that you will have guidance should you decide that the plaintiff is entitled to recovery." (*See* Jury Charge at 37). The court believes that these instructions manifest its clear intention to have the jury render a general verdict pursuant to 49(b), not a special verdict under 49(a) as the Railroad would have the court believe.

the court at the conclusion of trial. As a general rule, "if trial counsel fails to object to any asserted inconsistencies and does not move for resubmission of the inconsistent verdict *before* the jury is discharged, the party's right to seek a new trial is waived." *Lockard,* 894 F.2d at 304 (emphasis added); *see also Masure v. Donnelly,* 962 F.2d 128, 135 (1st Cir.1992); *Peckham v. Continental Casualty Ins., Co.,* 895 F.2d 830, 836 (1st Cir.1990); *Skillin v. Kimball,* 643 F.2d 19, 20 (1st Cir.1981); 5A J. Moore & J. Lucas, Moore's Federal Practice ¶ 49.04 at 45 (2d ed. 1986). The purpose for this rule "is to allow the original jury to eliminate any inconsistencies without the need to present the evidence to a new jury." *Lockard,* 894 F.2d at 304; *White v. Celotex Corp.,* 878 F.2d 144, 146 (4th Cir.), *cert. denied,* 493 U.S. 964, 110 S.Ct. 406, 107 L.Ed.2d 372 (1989). The rule, moreover, prevents a dissatisfied party, such as the Railroad, "from misusing procedural rules and obtaining a new trial for an asserted inconsistent verdict." *Id.*

The Second Circuit appears to take a guarded approach to the *per se* application of the waiver rule, acknowledging that a party's failure to make a timely objection "carries some weight" in the court's analysis of the waiver issue but that a court may not completely abdicate its responsibility to resolve inconsistencies in jury verdicts. *See Schaafsma v. Morin Vermont Corp.,* 802 F.2d 629, 634 (2nd Cir.1986).[2] Despite the Railroad's claim to the contrary, this contextual approach to the waiver issue, in the court's opinion, does not contravene the view that a party *may* waive its right to object to a jury verdict. *Cf. Turchio v. D/S A/S Den Norske Africa,* 509 F.2d 101, 105 (2d Cir.1974) (objections involving the form of jury interrogatories, like other procedural matters, may be waived by failure

to make a timely objection), *cited in Schaafsma,* 802 F.2d at 634.

Although indisputably applicable to inconsistencies alleged in verdicts governed by Rule 49(b), *see City of Richmond,* 918 F.2d at 438 n. 20; *Lockard,* 894 F.2d at 304; *White,* 878 F.2d at 146, the case law appears split on the waiver rule's application in the context of a verdict governed by Rule 49(a). Of the circuits which have considered this issue, the First Circuit expressly held the waiver rule applicable to a Rule 49(a) verdict, *Masure,* 962 F.2d at 134–135; *Skillin,* 643 F.2d at 19–20, while the Fourth and Fifth Circuits have suggested that the rule may be inappropriate to inconsistencies in special verdicts. *See, e.g., Mercer v. Long Mfg. N.C., Inc.,* 671 F.2d 946, 948 n. 1 (5th Cir.1982); *see also Ladnier v. Murray,* 769 F.2d 195, 198 n. 3 (4th Cir.1985). In *Skillin,* the court reasoned:

> the only efficient time to cure these problems of inconsistency would be after the jury announced the results of its deliberations and before it was excused.... To allow a new trial after the objecting party failed to seek a proper remedy at the only possible time would undermine the incentives for efficient trial procedure and would allow the possible misuse of Rule 49 procedures—no evidence of which do we detect in this case—by parties anxious to implant a ground for appeal should the jury's opinion prove distasteful to them.

*Skillin,* 643 F.2d at 19–20. In *Masure,* moreover, the First Circuit went so far as to declare that "the use of a special verdict form should alert counsel to the possibility of inconsistency" and, thus, there was no valid "excuse" for defendant's failure to raise a timely objection. *Masure,* 962 F.2d at 135 (citations omitted).

**2.** The court notes, moreover, that the Second Circuit's refusal to apply the waiver rule in *Schaafsma* involved a cross-appeal of a district court's denial of cross-motions for a new trial. In *Schaafsma,* the court found a "double inconsistency" in the jury's answers to interrogatories and faulted the district court for reviewing defendant's motion for a new trial on the merits while at the same time refusing to hear plain-

tiff's challenge because of timeliness. *See Schaafsma,* 802 F.2d at 634. Such compelling circumstances are not present in this case. Accordingly, absent any case law directly to the contrary, the court believes that the Second Circuit cases, including *Schaafsma,* do not preclude this court from exercising its discretion and applying the waiver rule in the context of this case.

In contrast, the refusal to apply the waiver rule in *Mercer* and *Ladnier* stems from the concern that error resulting from an entry of judgment based on inconsistent special interrogatories *"may* be an error of constitutional magnitude, infringing the seventh amendment right to jury trial 'by allowing the District Court to usurp the jury's function.'" *Ladnier,* 769 F.2d at 198 n. 3 (quoting *Mercer,* 671 F.2d at 948 n. 1) (emphasis added).

Although the court was unable to locate any established Second Circuit authority on the waiver rule's application to a special verdict, *cf. Brooks,* 958 F.2d at 528 (considering cross-motions for a new trial based on both a timely objection and failure of a jury to resolve inconsistencies in a special verdict after resubmission of the issue via a supplemental interrogatory), the court believes that the rationale in *Masure* and *Skillin* is particularly applicable to this case. For starters, the court is mystified as to why counsel was not prepared to raise the alleged inconsistency prior to the dismissal of the jury. Indeed, the court gave counsel ample opportunity to familiarize himself with the verdict form, the entire jury charge, and to discuss the elements of those documents with the court during a charge conference in chambers prior to the delivery of the charge by the court. *See* Rule 51, Fed.R.Civ.P. Thus, the court can find no meritorious reason, justification, or excuse as to why counsel failed to notice an inconsistency of the proportions alleged by

the Railroad and proceed, in turn, to raise the issue with the court in a timely manner after the verdict was announced.[3] *See Masure,* 962 F.2d at 135.

More importantly, the failure of counsel for the Railroad to make a timely objection to the jury's verdict prohibited the court from evaluating the merits of the Railroad's claim and, if necessary, resubmitting the issue to the jury prior to the discharge of the jury and the conclusion of the trial. By failing to raise a timely objection, the Railroad insured that the jury, a jury that had already found against it for damages in excess of $1,000,000, would be prevented from resolving inconsistencies in its own verdict. Instead, the Railroad chose to raise the issue at a later time in a motion that seeks the wasteful, but self-serving remedy of retrying the entire case before a new jury.

Indeed, the court "detect[s]" the type of procedural abuse that Skillin contends is at the heart of the waiver rule's application to Rule 49(a) verdicts. *Skillin,* 643 F.2d at 20. Particularly disturbing is the fact that the alleged inconsistency complained of actually favored the Railroad not Manes. The gravamen of the Railroad's claim is that the failure of the jury to award Manes damages for pain and suffering is inconsistent with its damage award of lost earnings and medical expenses. Assuming that the failure to award pain and suffering constitutes an inconsistency, an assumption

---

**3.** In addition, the Railroad insists that the court failed to give the Railroad an opportunity to object to the verdict following the reading of the verdict but before discharging the panel. Relying on *Jarvis v. Commercial Union Assur. Companies,* 823 F.2d 392 (10th Cir.1987), the Railroad concludes that the court's failure precludes it from applying the waiver rule as a matter of law. The court disagrees.

*Jarvis* involved a situation where "the court initially perceived the problem [with the verdict] but rather than sharing it with counsel, the judge sent the jury back to deliberate without the benefit of further instructions." *Id.* at 396. Because the district court failed, after becoming aware of a defect in the verdict, to explain the problem to the jury and counsel and thus, precluded the jury from reconsidering its verdict or counsel from objecting and thereby protecting the interests of their clients, the court's *per se* application of the waiver rule was error.

Such is not the case here. The court was never aware of an inconsistency in the verdict prior to discharging the panel. Indeed, as the court explains later in the body of its ruling the court does not believe that the verdict is inconsistent. If counsel for the Railroad believes that the alleged inconsistency was so blatant, counsel had an obligation to object immediately after the jury verdict was announced. The court finds absolutely nothing in the transcript to indicate that the Railroad was prohibited from making such a timely objection to the verdict. Although counsel clearly failed to object, whether out of neglect or by design, the court can only speculate, it does not follow that such a self imposed failure constitutes an attempt by the court to leave him "without a meaningful opportunity to protect the interests of [his] clients and to preserve the record for appeal." *Id.*

the court does not endorse, a timely objection would have insured the resubmission of the damages issue to the jury for consideration of additional damages for pain and suffering. Only after such a resubmission could the court adequately evaluate whether the verdict constituted error at all, let alone an error of the magnitude required for a new trial. *Cf. Ladnier*, 769 F.2d at 198 n. 3; *Mercer*, 671 F.2d at 948 n. 1. The reasoning underlying the Railroad's objection, moreover, compels the bizarre probability that if there was any inconsistency it was in the fact that the jury failed to increase the $1,097,701.21 award to Manes by including pain and suffering. The conversion of the Railroad's failure to make a timely objection, a failure that appears to the court to be in the Railroad's self interest, into a means for obtaining a new trial, constitutes the type of procedural abuse by a dissatisfied party that the waiver rule was designed to prohibit in special verdict as well as general verdict cases. *See Lockard*, 894 F.2d at 304; *Skillin*, 643 F.2d at 20. Accordingly, the court finds that the failure to raise a timely objection to the jury verdict prior to the jury's discharge constitutes a waiver and prohibits the Railroad from asserting verdict inconsistency as a basis for a new trial regardless of whether that verdict is governed by Rule 49(a) or Rule 49(b).[4]

Third, even when evaluated on the merits, the Railroad's challenge to the jury verdict fails to rise to the level of inconsistency required for a new trial under Rule 49(a). While the awarding of past and future lost earnings and medical expenses without a finding of damages for pain and suffering is unusual, it is not necessarily an inconsistency that as a matter of law, let alone error would require this court to grant the Railroad a new trial. *See Hinkle v. Waddell*, 945 F.2d 404 (Table, Text in Westlaw), Unpublished Disposition, No. 90–

6481 at 3 (6th Cir. Sept 27, 1991) (there is "no blanket" rule requiring a new trial in cases where a jury awards medical expenses without pain and suffering, jury need only consider the issue; decision to order a new trial for internal inconsistency in jury damage award is left to discretion of the court); *American States Ins. Co. v. Audubon Country Club*, 650 S.W.2d 252, 254 (Ky.1983) (in cases where medical expenses are awarded, jury need only consider an award of pain and suffering but no such award is required as a matter of law where such a finding is supported by the evidence); *cf. Brooks*, 958 F.2d at 530 (verdict irreconcilably inconsistent where jury "awarded zero damages for [plaintiff's] contemporaneous, *undisputed* pain and suffering") (emphasis added); *Davis v. Becker & Associates, Inc.*, 608 F.2d 621, 623 (5th Cir.1979) (verdict irreconcilable where jury awarded only medical expenses in the face of *uncontroverted* evidence of pain and suffering).

When a court submits special interrogatories to a jury pursuant to Rule 49(a), "the jury's answers thereto 'must be consistent with each other,' since they form the basis for resolving the case." *Brooks*, 958 F.2d at 529 (quoting *Auwood v. Harry Brandt Booking Office, Inc.*, 850 F.2d 884, 890 (2d Cir.1988)). When considering the claim that the jury's answers to those interrogatories are inconsistent, the court must " 'adopt a view of the case, if there is one, that resolves any seeming inconsistency.' " *Id.* (quoting *Auwood*, 850 F.2d at 891) (citations omitted). Only when "the jury's answers cannot be harmonized rationally," should the court set aside the judgment and order a new trial. *Id.*

The Railroad's challenge to the verdict is confined to the jury's answers to Interrogatory No. 5, the interrogatory requesting it to enter an amount of damages.[5] The Rail-

---

**4.** To hold otherwise, the court believes, would set dangerous precedent. Allowing the Railroad to challenge the jury's verdict in the absence of a timely objection runs counter to the sanctity normally accorded such verdicts and would encourage rampant abuse of Rule 49. Thus, refusal to apply the waiver rule here would merely encourage a dissatisfied party to withhold time-

ly notice of problems, problems that likely could be cured at trial by the original jury, as a pretext for seeking a second bite of the apple before a new jury that might be more receptive to its claims.

**5.** Interrogatory 5 states:

road does not claim that the Jury's answers on the other interrogatories covering issues of liability are themselves inconsistent or that the jury's findings of liability are inconsistent with its total award of damages of 1,097,701.21 contained in interrogatory 5. Rather, the Railroad contends that the jury's answer to a subpart 5(c), its award of no damages for pain and suffering, is internally inconsistent with its answers to 5(a) and (b), its award of $47,161.21 in past and future medical expenses and $1,050,-540.00 in past and future lost earnings respectively. (*See* Filing No. 100, Verdict Form, at 2.)

In adopting its "view of the case," the court believes that the jury's findings, while unusual, are not "hopelessly irreconcilable" as the Railroad insists. Here, the jury considered the issue of pain and suffering and simply chose not to award any damages on that issue. It appears that the jury found that the evidence relating to Manes' injury, a psychological injury diagnosed as post-traumatic stress syndrome, was sufficient to warrant compensation for medical expenses and lost earnings only. While courts should not speculate on reasons underlying jury verdicts, the jury's decision not to award pain and suffering was clearly within the scope of the evidence presented. *See Johnson v. Consolidated Rail Corp.*, 797 F.2d 1440, 1446 (7th Cir.1986) (damage awards are largely discretionary with the jury and will be upheld

if within scope of the evidence). Indeed, the Railroad geared much of its defense towards trying to convince the jury that Manes was malingering. In light of the conflicting expert testimony about the degree of Manes' injury and its obscure psychological manifestations, it is entirely reasonable and consistent for the jury to conclude that such an injury was compensable for past and future medical expenses and lost wages but not for pain and suffering.[6]

In support of its position, the Railroad offers *Brooks v. Brattleboro Memorial Hosp.*, 958 F.2d 525 (2d Cir.1992).[7] The court finds *Brooks* to be inapposite to the Railroad's claim in this case. First, the court notes that the verdict in *Brooks* was governed by Rule 49(a), the applicability of which was undisputed by the parties and never discussed by the Court. Here, there is a major dispute as to whether the verdict and the jury's answers to the interrogatories are governed by 49(a), as the Railroad contends, or the less rigid standard of 49(b) as Manes insists. *Cf. Lockard*, 894 F.2d at 304. Because *Brooks* is a Rule 49(a) case, its relevance is questionable at best to this case, a case that the court believes is governed by Rule 49(b).

Second, the challenge to the jury's failure to award pain and suffering was made by a dissatisfied plaintiff in *Brooks*, not a dissatisfied defendant. In stark contrast to the Railroad's claim here, *Brooks* consid-

---

What amount do you find, without any reduction for any contributory negligence, will fairly and adequately compensate the plaintiff
 A. For any past and future medical expenses caused as a result of the injuries suffered in the accident
 B. For his past and future lost earnings
 C. For his past and future pain and suffering, loss of enjoyment of life and fear of the future
 TOTAL
Proceed to Interrogatory No. 6. (Filing No. 100, Verdict Form at 2.)

**6.** The Railroad argues that "[a]ny attempt to reconcile the inconsistencies inherent in the present special verdict would ... exhaust the art and science of hermeneutics, and convert Procrustes' bed ... into Tennyson's 'bed of daffodil sky.'" (Filing No. 104, Def.'s Mem Supp. at 10.) While the court is not entirely clear what the Railroad means by this declaration, the court

directs the Railroad to the simple legal tenet: "[t]he rhetoric of appellants' brief ... betrays the weakness of [its] arguments." *McAllister Bros., Inc. v. United States*, 890 F.2d 582, 585 (2d Cir.1989) (Oakes, C.J.). The court, moreover, would be remiss if it did not point out to the Railroad that the bed of which it complains, was not made by Procrustes, nor even Tennyson, but by itself—a bed that it is now forced to lie in.

**7.** The court notes for the record that it was aware of *Brooks* prior to the Railroad's supplemental submission of the case to the court on May 22, 1992. Needless to say, the court's view that *Brooks* is not controlling in this context remains unchanged from its initial consideration of the case. Although the court originally had not planned to discuss *Brooks* in any detail, the court feels that such a discussion is now warranted in light of the Railroad's efforts to bring *Brooks* to the court's attention.

ered plaintiff's claim solely on the grounds that the damage award was inadequate. Indeed, central to the holding in *Brooks* was the fact that the trial court not only denied plaintiff's claim of inadequacy but compounded the claimed inadequacy by reducing the damage award by an additional $30,000. *Brooks*, therefore, is consistent with the court's view that the harm caused, if any, by jury awards of past and future medical expenses and lost wages but not pain and suffering, is to the plaintiff, not the defendant. *See Lockard*, 894 F.2d at 305; *Martin*, 20 F.R.D. at 201, 203.

Third, in *Brooks*, a timely objection was made to the jury's failure to award pain and suffering. *Id.* at 528. Unlike this case, moreover, the trial court in *Brooks* gave the jury a supplementary interrogatory in an effort to allow the members of the panel an opportunity to clarify its damage award. *Id.* Thus, the Court was not confronted with the waiver issue in *Brooks*.

Finally, the inconsistency in *Brooks* involved the jury's refusal to award damages for pain and suffering in light of the plaintiff's "contemporaneous, *undisputed* " evidence of such damages caused by acute physical illnesses, listeria and brain abscesses. *Id.* at 530 (emphasis added). Here, the evidence was fiercely disputed as to the degree of Manes' injuries and the extent of his pain and suffering. Manes' injury was diagnosed as post-traumatic stress syndrome, a psychological rather than physical injury. Such an injury was acknowledged by both parties to be difficult to document both as to degree and scope. Both sides, moreover, introduced conflicting expert testimony and evidence on the extent of this injury and the disability that resulted. The disputed nature of Manes' injury, therefore, makes the nature of the Railroad's challenge to the jury's verdict factually distinguishable on the merits from *Brooks*.

**B. Applicability of OSHA Regulations**

The Railroad contends that the court erred in charging the jury that violations of OSHA, 29 U.S.C. § 651 *et seq.*, may be considered as evidence of negligence. The Railroad insists that OSHA regulations are inapplicable to railroad bridges, such as the Cos Cob draw bridge, which are regulated instead by the Federal Railroad Administration ("FRA") pursuant to the Federal Railroad Safety Act ("FRSA"), 45 U.S.C. § 421 *et seq.* The Railroad, relying on *Velasquez v. S. Pac. Transp. Co.*, 734 F.2d 216 (5th Cir.1984), argues that FRSA, OSHA, and an FRA policy statement affirmatively preclude the application of OSHA regulations to railroad bridges. The Railroad concludes that instructing the jury that it may consider violations of pertinent OSHA regulations on the Cos Cob draw bridge as evidence of the Railroad's negligence constitutes error which entitles it to a new trial.[8] The court disagrees.

In *Velasquez*, the Fifth Circuit held "that OSHA standards do not apply to walkways along the tracks, *or railroad bridges ....*" *Velasquez*, 734 F.2d at 218 (emphasis added). *Velasquez* relied on an FRA policy statement that "OSHA regulations would not apply to ... *railroad bridges ...*," 43 Fed.Reg. 10583–10590 (1978) (emphasis added), in conjunction with OSHA's own pronouncement that it shall not apply "to working conditions of employees with respect to which other Federal agencies ... exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety and health," 29 U.S.C. § 653(b)(1) ("negative preemption provision"). *Id.* Based upon these two provisions, *Velasquez* concluded that the applicable OSHA regulations had been "displaced" by the FRA policy statement and that jury instructions to the contrary constituted error entitling the defendant railroad to a new trial. *Id.* at 218–219.

---

**8.** The court notes that the Railroad's claim is virtually identical to that contained in its motion in limine to preclude evidence of OSHA violations (Filing Nos. 47, 48, 68, Def.'s Mot. In Limine, Def.'s Mem.Supp., and Def.'s Rep. Mem.), argued prior to trial. Following oral argument, the court denied the motion in limine in an oral ruling from the bench on November 27, 1991. (*See* Filing No. 47, Endorsement Ruling, Def.s Motion in Limine (11/27/91) (denying motion for reasons stated on the record).)

The Second Circuit, however, has interpreted OSHA's negative preemption provision in a manner that appears to directly contravene the Fifth Circuit's ruling in *Velasquez*. Specifically, the Second Circuit has held repeatedly "that the term 'exercise,' as used in [OSHA's negative preemption provision], requires *an actual, concrete assertion of regulatory authority* as opposed to mere possession of authority." *Donovan v. Red Star Marine Services, Inc.*, 739 F.2d 774, 778 (2d Cir.1984) (holding OSHA to vessels not concretely regulated by the Coast Guard), *cert. denied*, 470 U.S. 1003, 105 S.Ct. 1355, 84 L.Ed.2d 377 (1985); *see also Marshall v. Northwest Orient Airlines, Inc.*, 574 F.2d 119, 122 (2d Cir.1978) (applying OSHA regulations to airport facilities). "[T]he decisions teach that [the negative preemption provision] was not intended to create industry-wide exemption based on isolated or narrow exercises of statutory authority." *Donovan*, 739 F.2d at 778. The negative preemption provision, moreover, "was not intended 'to eliminate OSHA's jurisdiction merely on the basis of hypothetical conflicts,' nor 'designed to provide wholesale exceptions for entire industries.'" *Id.* (quoting *Marshall*, 574 F.2d at 122).

■ Although the Second Circuit has yet to consider OSHA's negative preemption provision in the context of the FRA's policy statement, the court sees no reason to abandon the view that OSHA's negative preemption is only triggered where there is an actual, concrete assertion of regulatory authority in this case. Despite FRSA's clear intent that the Secretary of Transportation "shall ... prescribe, as necessary, appropriate rules, regulations, orders, and standards for all areas of railroad safety ...," 45 U.S.C. § 431, such safety regulations and standards have yet to be formerly enacted. In the absence of any specific FRA regulations which could fill the vacuum created by the preemption of existing regulations governing safety on railroad bridges, the court believes that to preempt OSHA in this case would directly contradict the view of this circuit that the negative preemption provision was "not intended to create industry-wide exemptions" or provide "wholesale exceptions" from safety regulations for Railroads based merely on an isolated exercise of statutory authority by the FRA or "hypothetical" regulatory conflicts. *Donovan*, 739 F.2d at 778. The court notes, moreover, that the FRA has issued proposed safety regulations governing railroad bridges that are virtually identical to the OSHA regulations subject to preemption.[9] Accordingly in light of these factors and in the absence of any Second Circuit case law to the contrary, the court believes that to preclude the applicability of OSHA regulations as possible evidence of negligence in this case would be to create an industry-wide exemption from safety regulations that the Congress, the Second Circuit, and arguably the FRA never intended to create.

■ Finally, even if *Velasquez* were the law of this circuit, the court believes that the jury instruction challenged by the Railroad does not constitute the type of error which justifies a new trial. The court's "determination of whether error was prejudicial is guided by the harmless error doctrine as incorporated in" Rule 61, Fed. R.Civ.P. *Nat'l R.R. Passenger Corp. v. One 25,900 Square Foot Parcel of Land*, 766 F.2d 685, 688 (2d Cir.1985); *see also Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 517 (8th Cir.), *cert. denied*, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984); *Farnarjian v. American Export Isbrandtsen Lines, Inc.*, 474 F.2d 361, 364–365 (2d Cir.1973). "That doctrine cautions that a judgment should stand unless it appears inconsistent with substantial justice because it followed from an error that affected the substantial rights of the parties." *Nat'l R.R. Passenger Corp.*, 766

9. The court finds no merit in the Railroad's contention that the FRA's issuing of "proposed" safety regulations and/or a policy statement expressing their intention to regulate the field of railroad safety constitute an actual, concrete exercise of regulatory authority. Again, to view this type of action as an exercise of regulatory authority that triggers the negative preemption provision would lead to wholesale, industry wide exemptions from safety regulations in work places that Congress clearly intended to regulate.

F.2d at 688. Thus, even if the consideration of OSHA violations by the jury was improper, the court must still decide "whether, in the context of the whole record, the error was prejudicial." *Id.*

After reviewing the instruction in issue and the record of the case, the court is satisfied that no such prejudice occurred. First, the court notes that the jury instruction in this case differs from the instruction found to constitute prejudicial error in *Velasquez.* In *Velasquez*, the trial court instructed the jury that "violation of [OSHA] standards do [sic] not decide the question of negligence completely, but *is* evidence of negligence." *Velasquez*, 734 F.2d at 218 (emphasis added). In contrast, the instruction here is more tempered:

> If you find that this absence violated certain regulations of the Occupational Safety and Health Act or OSHA this does not necessarily make the railroad negligent as a matter of law, or negligent *per se.* You *may*, however, consider a violation of OSHA regulations requiring safety nets and handrails as evidence of negligence in deciding whether the railroad acted negligently toward the plaintiff.

(Filing No. 99., Jury Instructions at 31 (emphasis added).) The instruction states only that the jury *"may"* consider such violations as evidence of negligence not that such a violation *"is"* evidence of negligence. The jury, therefore, was under no affirmative obligation in this case to consider the OSHA violations as evidence of negligence.

Second, the court believes that the failure of the Railroad to provide safety nets and walkways on the bridge was sufficient by itself to convince the jury of the Railroad's negligence. Unlike *Velasquez* in which the plaintiff appears to have predicated his entire case on an alleged OSHA violation, *see Velasquez*, 734 F.2d at 217–

218, Manes relied on additional evidence to establish the Railroad's negligence. In this regard, the court notes that the FRA's proposed safety regulations were virtually identical to that of OSHA's and provide an additional indication of the Railroad's negligence. Thus, unlike *Velasquez*, where the Court found that "the error create[d] 'a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations,'" *Id.* at 219 (quoting *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1372 (5th Cir.1981)), this court, after reviewing the record in its entirety, has little doubt that the jury instruction on the OSHA regulations did not substantially influence the ultimate outcome of this case.

**C. Past Medical Expenses**

 Next, the Railroad challenges the admissibility of evidence documenting past medical expenses incurred by Manes as a result of the accident.[10] The Railroad contends that its prior payment of those medical bills and expenses pursuant to a major medical insurance provision in the collective bargaining agreement precludes Manes from recovering damages for past medical expenses. The Railroad insists that the collateral source rule does not apply to the recovery of those expenses because the payment of Manes' expenses in this case constitutes an insurance payment provided by the Railroad to the employee for the express purpose of indemnifying the Railroad against future liability under FELA for such expenses. The Railroad concludes, therefore, that an award of damages for past medical expenses previously covered by the collective bargaining agreement constitutes a "double recovery" of damages prohibited under the law. The court disagrees.

It is settled law in this district that, absent an express provision in a railroad's collective bargaining agreement allowing

**10.** Again, the Railroad seeks to have the court reconsider a prior ruling on one of its motions in limine. Here, the Railroad seeks reconsideration of the court's denial from the bench of the Railroad's motion in limine to preclude evidence of past medical expenses argued during the trial on December 16, 1991. (*See* Filing No.

84, Endorsement Ruling on Def.'s Mot. In Limine (12/16/91).) Both Manes and the Railroad adopt the arguments submitted in their memoranda of law on the motion in limine for purposes of the court's reconsideration of the issue as part of this motion for a new trial.

the set off of medical expense payments against a future recovery by an employee, payments of an employee's medical expenses by a railroad are governed by the collateral source rule and, thus, are not subject to a set off. *Perry v. Metro–North Commuter R.R.*, 716 F.Supp. 61, 62–64 (D.Conn.1989) (Dorsey, J.); *see also Curley v. Metro–North Commuter R.R.*, Civ. No. N–89–364 (TFGD) (May 20, 1991) (Daly, J.) (bench ruling denying the Railroad's motion in limine to preclude evidence of plaintiff's past medical expenses); *Brady v. Nat'l R.R. Passenger Corp.*, 714 F.Supp. 601, 602 (D.Conn.1989) (Nevas, J.) (endorsing *Perry*'s view that court must look to the specific agreement to determine whether benefit payment is exempt from the collateral source rule). In denying the Railroad's motion to preclude evidence of medical expenses, *Perry* reasoned:

> The collective bargaining agreement now in effect requires the railroad to continue to provide the same major medical benefits the employees had under GA–23,000 at no cost to the employees. This is a general benefit, not one restricted to medical costs arising from circumstances which give rise to FELA claims ... The exception was where the injured employee had signed stipulations providing for a set off and the employer's disability benefit plans expressly provided that payments under FELA would be set off against benefits.

*Perry*, 716 F.Supp. at 63.

Here, despite the Railroad's request that the court construe language in the collective bargaining agreement as expressly providing for such a set off, the Railroad is unable to point to any language which might support a departure from *Perry*. Indeed, as was the case in *Perry*, the collective bargaining agreement states that the Railroad "will provide benefits comparable to those provided by Conrail under GA 23,000." (Filing No. 85, Def.'s Mem.Supp.Mot.Limine, Ex. D). Accordingly, the court declines the Railroad's request to construe the collective bargaining agreement so as to require the preclusion of evidence concerning Manes's past medical expenses during trial.

**D. Other Grounds**

The Railroad sets forth other grounds in support of its motion for a new trial. Specifically, the Railroad contends (1) that the court erred in admitting statements by a police officer concerning what Manes said at the Hospital following his accident under the excited utterance exception to the hearsay rule; (2) that the court erred in refusing to give a charge that the presence of ice and frost on the bridge is not proof of negligence; (3) that the court erred in failing to instruct the jury that if it found that the plaintiff intentionally or voluntarily jumped then it must return a verdict for the defendant; and (4) that the court erred in failing to take judicial notice of work life expectancy tables. After careful review of the parties' submissions on this issue, the court finds the Railroads claims to be without merit. Accordingly, the railroad has failed to persuade the court that any of these issues are sufficient to warrant a new trial in this case.

### Conclusion

For the reasons stated, the Railroad's motion for a new trial is denied and judgment for Manes is affirmed in accordance with the jury's verdict.

SO ORDERED.